Jones, by guardian *ad litem,* Appellant, vs. The Florence Mining Company, Respondent.

*April 8 — May 15, 1886.*

Master and Servant. *(1) Infant servant in dangerous place: Duty of master to explain danger: Negligence of fellow-servants. (2) Duty of miners to guard against dangers: Failure to remove dangers caused by their neglignce: Injury to other employee.*

1. The employer of a person who, from youth, inexperience, or want of intelligence, is incapable of comprehending the risk connected with a hazardous employment, is bound to explain the danger to such employee before putting him to work; and if he fails to do so he will be liable for an injury resulting from the danger known to the employer and unknown to the employee, although the immediate cause of the injury was the negligence of co-employees.

2. *It seems* that the duty of guarding against the danger resulting from leaving loose stones or ore in the roof or sides of a mine is one which the employer may impose upon the miners themselves. But *quære* whether the employer would not be liable if a neglect of this duty had been brought to the knowledge of the captain of the mine or the pit boss, and no steps had been taken within a reasonable time to remove the danger, and an accident afterwards happened to an employee who was not bound to protect himself against such a danger.

Jones, by guardian ad litem, vs. The Florence Mining Co.

APPEAL from the Circuit Court for *Milwaukee* County. The case is stated in the opinion.

*Adolf Herdegen,* attorney, and *James G. Flanders,* of counsel, for the appellant, argued, among other things, that the work for which the plaintiff was first employed did not require his assuming any risk from the falling of pieces from the roof of the mine, and it cannot be claimed that the accident occurred from the ordinary risks that he took upon himself when he entered the employment of the company. He was ordered out of the line of his duty, and not warned of the dangers to which he would be exposed in the mine, notwithstanding that the pit boss, who ordered him into the mine, was well acquainted with the dangers of the mine and had notice of the dangers of the piece that afterward fell on the plaintiff. It was the pit boss's duty to call the attention of the plaintiff to this particular piece of ore. *Strahlendorf v. Rosenthal,* 30 Wis. 674; *Steffen v. C. & N. W. R. Co.* 46 id. 259; *Naylor v. C. & N. W. R. Co.* 53 id. 661; *Jones v. L. S. & M. S. R. Co.* 49 Mich. 573; *Thompson v. C., M. & St. P. R. Co.* 14 Fed. Rep. 564; *Cook v. St. P., M. & M. R. Co.* 24 N. W. Rep. 311. This rule is yet more stringent when the employee is an infant not acquainted with the business. *Union Pac. R. Co. v. Fort,* 17 Wall. 553. The accident did not occur through the negligence of a fellow-servant. It was the duty of the pit boss to see that the mine was safe, and he cannot be regarded the fellow-servant of the plaintiff in respect to any neglect to make the mine safe. *Brabbits v. C. & N. W. R. Co.* 38 Wis. 289; *Wedgwood v. C. & N. W. R. Co.* 41 id. 478; *Smith v. C., M. & St. P. R. Co.* 42 id. 520; *Bessex v. C. & N. W. R. Co.* 45 id. 477; *Hulehan v. G. B., W. & St. P. R. Co.* 58 id. 319; *Peschel v. C., M. & St. P. R. Co.* 62 id. 338; *Schultz v. C., M. & St. P. R. Co.* 40 id. 589; *S. C.* 48 id. 375; *Kansas Pac. R. Co. v. Little,* 19 Kan. 267; *Kain v. Smith,* 89 N. Y. 376.

For the respondent there was a brief by *Van Dyke &*

*Van Dyke*, attorneys, and *Jenkins, Winkler, Fish & Smith*, of counsel, and oral argument by *Mr. Geo. D. Van Dyke* and *Mr. Jenkins.* They contended, *inter alia*, that the negligence, if any, was the negligence of a co-employee, for which there is no recovery. The plaintiff and the gang of miners were clearly fellow-servants, and the pit boss or foreman was also a fellow-servant with the plaintiff. *Hoth v. Peters*, 55 Wis. 405; *Moseley v. Chamberlain*, 18 id. 700; *Cooper v. M. & P. du C. R. Co.* 23 id. 668; *Anderson v. M. & St. P. R. Co.* 37 id. 321; *Stetler v. C. & N. W. R. Co.* 46 id. 497; *Flannagan v. C. & N. W. R. Co.* 50 id. 462; *Howland v. M., L. S. & W. R. Co.* 54 id. 226; *Dwyer v. Am. Exp. Co.* 55 id. 453; *Heine v. C. & N. W. R. Co.* 58 id. 528; *Pease v. C. & N. W. R. Co.* 61 id. 163; *Peschel v. C., M. & St. P. R. Co.* 62 id. 338; *Hall v. Johnson*, 3 Hurl. & C. 589; *Wilson v. Merry*, L. R. 1 Scotch App. Cas. 326; *Howells v. Landores Steel Co.* L. R. 10 Q. B. 62; *S. C.* 11 Eng. Rep. 153; *Woodley v. Met. D. R. Co.* L. R. 2 Ex. Div. 384, 396; *S. C.* 21 Eng. Rep. 506; *McAndrews v. Burns*, 39 N. J. Law, 117; *Johnson v. Boston*, 118 Mass. 114; *O'Connor v. Roberts*, 120 id. 227; *Kelly v. Norcross*, 121 id. 508; *Zeigler v. Day*, 123 id. 152; *Kenney v. Shaw*, 133 id. 501; *Flynn v. Salem*, 134 id. 351; *Floyd v. Sugden*, id. 563; *Quincy Mining Co. v. Kitts*, 42 Mich. 34; *Peterson v. Whitebreast C. & M. Co.* 50 Iowa, 673; *Randall v. B. & O. R. Co.* 109 U. S. 478; *Kielly v. Belcher S. M. Co.* 3 Sawy. 500; *Buckley v. G. & C. S. Mining Co.* 14 Fed. Rep. 833; *S. C.* 8 Sawy. 395; *Bunt v. Sierra B. G. M. Co.* 24 Fed. Rep. 847. And see, especially, *Hall v. Johnson*, 3 Hurl. & C. 589; *Lehigh Valley C. Co. v. Jones*, 86 Pa. St. 440; *Caldwell v. Brown*, 53 id. 456; *Gilman v. East. R. Co.* 13 Allen, 443. Infancy and inexperience do not modify the rule of fellow-servants. *Hall v. Johnson*, 3 Hurl. & C. 589; *Murphy v. Smith*, 19 C. B. (N. S.), 361; *Anderson v. Morrison*, 22 Minn. 274; *Brown v. Maxwell*, 6 Hill, 592; *King v. B. & W. R. Corp.* 9 Cush. 112; *Sullivan*

*v. India Mfg. Co.* 113 Mass. 396; *Curran v. Merchants' M. Co.* 130 id. 374; 2 Thompson on Neg. 977. Respondent did not undertake to insure appellant against injury by fragments of ore falling from the stope whence the ore was being mined and removed. It would be impossible for respondent to prevent the fall of such fragments from such a place, except by ceiling up the surface of the ore, necessarily causing an abandonment of all mining. The very process of mining ore necessarily included blasting and breaking it down, the fall of fragments loosened by blasting, and the delegation of the duty of removing such fragments to the miners thus engaged. Respondent performed its whole duty in this respect by employing competent miners and providing them with ladders and other suitable appliances for their work. *Peschel v. C., M. & St. P. R. Co.* 62 Wis. 338, 345; *Kelly v. Abbot*, 63 id. 307; *Steffen v. C. & N. W. R. Co.* 46 id. 259; *Howland v. M., L. S. & W. R. Co.* 54 id. 226; *Hobbs v. Stauer*, 62 id. 108; *Lehigh Valley C. Co. v. Jones*, 86 Pa. St. 440; *Floyd v. Sugden*, 134 Mass. 563; *Zeigler v. Day*, 123 id. 152; *King v. B. & W. R. Corp.* 9 Cush. 112; *Johnson v. Boston*, 118 Mass. 114; *Kelley v. Norcross*, 121 id. 508; *Kenney v. Shaw*, 133 id. 501; *McGee v. Boston Cordage Co.* 139 id. 445; *Quincy Mining Co. v. Kitts*, 42 Mich. 34; *Mich. Cent. R. Co. v. Dolan*, 32 id. 510; *Ft. W., J. & S. R. Co. v. Gildersleeve*, 33 id. 134; *Warner v. Erie R. Co.* 39 N. Y. 468; *Gibson v. Erie R. Co.* 63 id. 449; *Wilson v. Merry*, L. R. 1 Scotch App. Cas. 326; *Hall v. Johnson*, 3 Hurl. & C. 589; Wood on M. & S. 902–4.

TAYLOR, J. The appellant, a minor, brought this action to recover damages for an injury which he sustained while in the employ of the respondent company.

The uncontroverted facts in the case are as follows: The appellant was at the time of the accident, according to his testimony, less than fifteen years old. He had been em-

272    SUPREME COURT OF WISCONSIN,

Jones, by guardian ad litem, vs. The Florence Mining Co.

ployed three weeks before by the company to work above ground, carrying the drills and other tools from the mouth of the mine then being worked by the company to the blacksmith shop for repairs, and bringing them back to the mouth of the mine. He had been so employed for about three weeks before he was injured. On the day the injury was received the appellant had gone down into the mine, and was at work there carrying the drills from the place where they were used by the miners to the bottom of the shaft, putting them in the bucket, going up with them, carrying them to the blacksmith shop, getting them repaired, and then returning them to the miners in mine No. 1. While he was in the mine, sitting down and waiting to take some drills which the miners were still using, a large piece of .ore fell from the roof of the mine, and struck him upon the leg, and so injured it that it became necessary to amputate it. To recover damages for this injury this action was brought.

Whether the appellant was sent into the mine by either the superintendent or captain of the mine, or by the mine boss, is a controverted question. The appellant, and at least one 'of his witnesses, testified on the trial that he was, on the morning of the day on which the accident happened, sent down into the mine to work in carrying and returning drills as above stated; and that previous to this time he had not worked in the mine at all, although he admits he had been down in the mine a few times before, but had not been sent there to do any work until the morning of the accident. The captain of the mine and pit boss both testified that the appellant was not sent into the mine by either of them to do any .work, but, on the contrary, that he had been forbidden by them to go down into the mine for any purpose. It is shown by the evidence that the appellant was placed under the pit boss, with instructions to do what the boss required him to do. There was testimony given

Jones, by guardian ad litem, vs. The Florence Mining Co.

on the trial, on the part of the appellant, showing that the pit boss was notified several times before the accident happened that the roof of the mine was in a dangerous condition at the place where the accident happened, and that it ought to be attended to at once; and that the captain of the mine was informed the day before the accident happened that the roof of the mine was in a dangerous condition. The same witness also testified that it was the duty of the pit boss to see that the mine is made all safe. This fact was also controverted, and on the part of the defendant the evidence was that it was the duty of the miners themselves to see to the safety of the roof and walls of the mine,— especially to see that all loose or dangerous rocks or ore was removed from the roof of the mine. But as the circuit judge directed a verdict for the defendant, we must, for the purposes of this appeal, consider the testimony given on the part of the appellant as though it were uncontradicted by the evidence given on the part of the respondent; and the question is whether, upon the evidence given by the appellant, the jury would have been justified in finding a verdict for the appellant.

On the part of the appellant it is claimed that, upon the evidence produced, the jury would have been justified in finding a verdict for the plaintiff upon two grounds: *First.* That it was the duty of the company to see that the roof of the mine where the plaintiff was at work was kept in a reasonably safe condition, and that if the injury occurred from a want of reasonable care on the part of the company in keeping the roof of the mine in such safe condition, then the company is liable to the plaintiff for the damages sustained. *Second.* That the company owed a duty to the plaintiff, who was a minor not over the age of fifteen years, if it sent him to work in a dangerous place, to fully instruct him as to the danger of the employment; and if it neglected to so instruct him, and he was injured by reason of a dan-

ger of which he was not informed, and of which he had no adequate knowledge, then the defendant is liable, even though the accident was caused by the neglect of those employed in the mine, and not of the company.

On the part of the respondent it is claimed that the plaintiff was properly nonsuited — (1) for the reason that the evidence conclusively shows that the accident happened solely through the fault of the miners working in the mine with the plaintiff, and so occurred through the fault and negligence of the co-employees of the plaintiff, and not through the fault of the company; (2) if it should be admitted that it was the duty of the pit boss to see that the roof of the mine was kept in a safe condition, and the accident happened through the negligence of such pit boss, such negligence on his part would be the negligence of a co-employee, and not the negligence of the company, and the company would not be liable; (3) that the injury occurred by reason of an accident which is incident to the business of working in mines, the risk of which the employee assumes when he enters the service, and there is no express or implied contract on the part of the mining company to protect him against such accidents.

As to the first point made by the appellant, we are not prepared to say that it is well taken. There is the statement of one witness on the part of the plaintiff, made in a general way, "that the pit boss is supposed to get ore out of the mine, and see that the back is all right, and make the mine all safe." This is the only evidence given on that subject on the part of the appellant upon that point, and there is no explanation by the witness showing from what source he obtained his information as to the duty of the pit boss in this respect. On the part of the respondent the evidence is very strong that it was and is the duty of the miners themselves to see that the roof and sides of the mine are made safe against all danger from loose ore or stones

in the roof or sides of the mine in which they are working at the time, and as to that matter the pit boss has no particular charge or duty. We have grave doubts whether it would be our duty to set aside the nonsuit upon this point alone, where the evidence is so overwhelmingly against the plaintiff.

There may be other dangers in the working and management of a mine which the court would, even in the absence of evidence, charge the employers with the duty of guarding against for the protection of those in their employ; but the danger resulting from leaving loose stones or ore in the roof or sides of the mine is a danger which the employer may well impose the duty of guarding against upon those working in the mine. Such danger is the direct result of their operations, and they are always on the ground, and have better facilities for knowledge when a danger of that kind exists, and for removing the same, than the pit boss or captain of the mine, and there would seem to be no ground for holding that the owner of the mine may not impose such duty upon the miners themselves.

A different question might have arisen had the proofs shown that, notwithstanding the general duty of the miners to provide against this danger, they had neglected to perform their duty, and the knowledge of this neglect had been brought home to the captain of the mine, or even the pit boss, and no steps had been taken, within a reasonable time, to remove such danger or cause it to be removed, and an accident had happened after such neglect to an employee whose duty did not require him to protect himself against such danger. See *Gilman v. Eastern R. Co.* 13 Allen, 433, 441, 442, and cases there cited.

A case of that kind was decided by the House of Lords on an appeal from a Scotch court, and adversely to the mining company. *Paterson v. Wallace*, 1 Macq. 748. That was a mining case. The action was brought by the widow

and children of the husband and father, who had been killed while in the employment of the defendants in their mine, by the falling of a stone from the roof of the main road of the mine while the deceased was at work in the mine at the spot where the stone fell. The evidence showed that the underground manager of the mine had notice of the dangerous condition of the stone before the accident happened, in time to have removed it before it fell; that he advised the workmen that there was no immediate danger, and afterwards promised to remove it, and sent some persons to remove it, but before they reached the place the stone fell, and killed the deceased. Upon that proof, the Scotch court directed a verdict for the defendant; and upon appeal to the House of Lords the judgment was reversed; that court holding that, upon the evidence, the case should have been submitted to the jury, because the evidence of the plaintiff showed that the underground manager of the mine knew of the dangerous condition of the stone, and having such knowledge, it became his duty to cause it to be removed within a reasonable time, and if he neglected so to remove it, and an injury happened to a person working in the mine by reason of such neglect, the company was liable in damages to the person so injured. In the opinion in that case it is said the court ought to have stated the law to the jury as follows: " That if Snedden, the defendant's manager, had failed in his duty in timeously directing the stone in question to be removed, it would afford no defense that Paterson continued to work after the orders for the removal of the stone had been ultimately given." There was nothing in the case tending to show that it was a part of Paterson's duty to protect himself against the defect in the roof of the mine.

This case seems to be in conflict with the case of *Hall v. Johnson*, 3 Hurl. & C. 589, cited by the learned counsel for the respondent, and much relied on in their brief in this case.

In *Hall v. Johnson*, in the Exchequer Chamber, the court decided, in a case almost identical in its facts with the case of *Paterson v. Wallace*, that the defendant was not liable, and sustained a nonsuit ordered by the trial court on the ground that the underground manager, or, as he was designated in the last case, " under-looker," whose duty it was to see that the roofs of the mine were propped and made secure, was a co-employee with the person injured. Whether, upon all the facts in the two cases, they can stand together, or whether the cases are to be reconciled upon the ground that the law in Scotland upon the subject of the liability of the master to the servant is different from the law in England, we need not consider in this case, as we have concluded that the judgment in this case must be reversed upon the sound proposition made by the learned counsel for the appellant.

We think it is now clearly settled that if a master employs a servant to do work in a dangerous place, or where the mode of doing the work is dangerous and apparent to a person of capacity and knowledge of the subject, yet if the servant employed to do work of such a dangerous character or in a dangerous place, from youth, inexperience, ignorance, or want of general capacity, may fail to appreciate the dangers, it is a breach of duty on the part of the master to expose a servant of such character, even with his own consent, to such dangers, unless he first gives him such instructions or cautions as will enable him to comprehend them, and do his work safely, with proper care on his part. This rule does not in any manner conflict with the other well-established rule that the employee in any particular business assumes all the risks and hazards which are incident to such business, when the employee is of sufficient intelligence and knowledge to comprehend the dangers incident to his employment; and in the case of an adult person, in the absence of evidence showing the contrary, the presumption is that the

employee has sufficient intelligence to comprehend the dangers incident to his employment. *Coombs v. New Bedford Cordage Co.* 102 Mass. 572; *Sullivan v. India M. Co.* 113 Mass. 396; *Grizzle v. Frost,* 3 Fost. & F. 622; *Gilman v. Eastern R. Co.* 13 Allen, 433, 441, 442; *Bartonshill Coal Co. v. Reid,* 3 Macq. 266, 295; *Hill v. Gust,* 55 Ind. 45; *St. L. & S. E. R. Co. v. Valirius,* 56 Ind. 511; *Railroad Co. v. Fort,* 17 Wall. 553; *Thompson v. C., M. & St. P. R. Co.* 14 Fed. Rep. 564; *Cook v. St. P. M. & M. R. Co.* 24 N. W. Rep. 311; *Anderson v. Morrison,* 22 Minn. 274; *Strahlendorf v. Rosenthal,* 30 Wis. 674. These cases, and many others which might be cited, fully establish the rule as above stated in regard to the employment of servants, who, by reason of youth, inexperience, or want of capacity, are unable to comprehend the dangers incident to a hazardous employment.

There are many reasons given by the courts for holding to the rule above stated, the most satisfactory of which are — (1) that the master owes a duty towards an employee who is directed to perform a hazardous and dangerous work, or to perform his work in a dangerous place, when the employee, from want of age, experience, or general capacity, does not comprehend the dangers, to point out to him the dangers incident to the employment, and thus enable him to comprehend, and so avoid, them, and that neglect to discharge such duty is gross negligence on the part of the employer; (2) that such an employee does not assume the risk of the dangers incident to such hazardous employment, because he does not comprehend them, and the law will not therefore presume that he contracted to assume them.

In the case of *Coombs v. New Bedford Cordage Co.* 102 Mass. 572, a boy of the age of fourteen years was employed to work in a dangerous place, on account of the machinery which was in operation in his immediate vicinity, and the court say: "The notice which the defendants were bound

to give the plaintiff of the nature of the risks incident to the service which he undertook must be such as to enable a person of his youth and inexperience in the business intelligently to appreciate the nature of the danger attending its performance. The question, indeed, on this branch of the case, is not of due care on the part of the plaintiff, but whether the cause of the injury was one of which he knowingly assumed the risk, or one of which, by reason of his incapacity to understand and appreciate its dangerous character, or the neglect of the defendants to take due precautions to effectually inform him thereof, the defendants were bound to indemnify him against the consequences. But in determining this question, it is proper and necessary to take into consideration, not only the plaintiff's youth and inexperience, but also the nature of the service which he was to perform, and the degree to which his attention, while at work, would need to be devoted to its performance. The obligation of the defendant would not necessarily be discharged by merely informing the boy that the employment itself, or a particular place or machine in the building or room in which he was set to work, was dangerous. Mere information in advance that the service generally, or a particular thing connected with it, was dangerous, might give him no adequate notice or understanding of the kind and degree of danger which would necessarily attend the actual performance of his work."

In the case of *Grizzle v. Frost*, 3 Fost. & F. 622, a girl sixteen years old was employed in a rope factory about a dangerous machine. The court say: "There is evidence both of negative and positive negligence on his part [meaning on the part of the foreman of the defendant],— negative, in not giving the girl proper instructions as to the use of the machine; positive, in expressly directing her to do the very thing she had done, and which was admitted was dangerous,— so dangerous, indeed, that the case for the de-

fense was that she had been told *not* to do it." In regard to the negligence of the foreman being the negligence of the defendants in a case of this kind, the court say: "The foreman was put by them [defendants] in their place to employ this young person in and about dangerous machinery of which she was quite ignorant, and any negligence of his in the matter would be negligence for which they would be responsible."

In the case of *Railroad Co. v. Fort*, 17 Wall. 553, a boy sixteen years old was injured while in the employ of the railroad company in a machine-shop, and while performing a hazardous act in connection with the machinery, and not within the scope of his general employment. He undertook to do the dangerous act by order of one Collett, under whose control and superintendence he was at the time. The court, in the opinion, say: " But this boy occupied a very different position. , How could he be expected to know the peril of the undertaking. He was a mere youth, without experience, and not familiar with machinery. Not being able to judge for himself, he had the right to rely on the judgment of Collett, and doubtless entered upon the execution of the order without apprehension of danger. Be that as it may, it was a wrongful act on the part of Collett to order a boy of his age and inexperience to do a thing which, in its very nature, was perilous, and which any ordinary man would know to be so.    .    .    .    For the consequence of this hasty action the company are liable, either upon the maxim of *respondeat superior*, or upon the obligation arising out of the contract of service. The order of Collett was their order. They cannot escape responsibility on the plea that he should not have given it."

In *Bartonshill Coal Co. v. Reid*, 3 Macq. 266, 295, the Scotch case of *O'Byrne v. Burn* is referred to by Lord CRANWORTH in his opinion. He states the facts of that case as follows: "The plaintiff was a girl, employed by the de-

fender in his clay-mill. She was altogether inexperienced, having been only nine days in the defender's service, and she was therefore unaware of the risks from the machinery. Anderson, acting under Burn as the manager of the works, put her to remove some waste clay while the rollers were in motion. This was a duty which Anderson ought to have performed himself, and it ought not to have been done at all until he had caused the movement of the rollers to be suspended. The pursuer, in attempting to remove the waste in obedience to Anderson's order, sustained a severe injury from the rollers; and she raised an action against Burn for damages. The Lord Ordinary held the allegations relevant, so as to entitle her to issues for the trial of the case." After stating the facts of the case as above quoted, Lord CRANWORTH says: "This might have been quite right. It may be that if a master employs inexperienced workmen, and directs them to act under the superintendent, and to obey the orders of a deputy whom he puts in his place, they are not, within the meaning of the rule in question, employed in a common work with the superintendent. They are acting in obedience to the express commands of their employer, and if he, by the carelessness of his deputy, exposes them to improper risks, it may be he is liable for the consequences."

In the case of the same *Bartonshill Coal Co. v. McGuire*, 3 Macq. 311, the Lord Chancellor, referring to the case of *O'Byrne v. Burn*, says: "It was hardly possible to apply the principle of the servant having undertaken the service with a knowledge of the risks incident to it. She was an inexperienced girl, employed in a hazardous manufactory, placed under the control, and it might be added the protection, of an overseer, who was appointed by the defender and intrusted with this duty; and it might well be considered that, by employing such a helpless and ignorant child, the master contracted to keep her out of harm's way in assigning to her any work to be performed."

In the case of *Strahlendorf v. Rosenthal,* 30 Wis. 674, this court held that "one who agrees to work for another in any employment takes upon himself the usual risks of such employment; but if there exist facts known to the employer, and unknown to the employee, increasing the risk of such employment, the employer is bound to disclose such facts to his employee; otherwise, he will be liable for negligence, in case of injury to the latter resulting from such unusual risks." In this case the court was speaking of an adult employee, who is presumed to comprehend and understand the ordinary risks of his employment. The rule stated in this last case, when applied to the employment of a person who, from youth, inexperience, or want of intelligence, is incapable of comprehending the risk connected with a hazardous employment, would require the master to inform the employee of such dangers before putting him at his work, and, if he failed to do so, would render him liable for an injury resulting from the danger which was known to the employer and unknown to the employee. The other cases cited place the liability of the master, in case of the employment of children, or other persons who are not competent to appreciate the risks of a hazardous employment, upon like grounds.

The case of *Sullivan v. India M. Co.* 113 Mass. 396, is not in conflict with the cases in 102 Mass. and 13 Allen. The case in 113 Mass. simply holds that if a child be employed to operate a machine, and the employer fails to give proper instructions as to the manner of using it, the master will not be held liable if it appears that the child had obtained the proper knowledge for using the machine from other sources before the accident happened.

It is said by the learned counsel for the respondent that infancy and inexperience do not modify the rule of fellow-servants. But that statement only holds good when it appears that such employee has been properly instructed by his employer as to the dangers of his employment, or has

acquired knowledge of such dangers from other sources. When he has been properly instructed, and knows the dangers of his employment, then he stands on the same footing as any other employee, and cannot recover for any injury caused by the negligence of a fellow-servant. See *Curran v. Merchants' M. Co.* 130 Mass. 374; *Sullivan v. India M. Co.* 113 Mass. 396, 399; *Anderson v. Morrison*, 22 Minn. 274.

In the case at bar the evidence on the part of the plaintiff shows that the plaintiff was less than fifteen years old when he entered into the employment of the defendant. The evidence on both sides shows that when he was first employed, and up to the day he was injured, he was employed to work above ground, at work which was not apparently hazardous work. There is no evidence that he had ever before worked under ground in a mine, or that he was at all familiar with the dangers of such employment. That the work under ground was not considered proper work for a boy of his age to perform may be presumed from the fact that the defendant's captain and pit boss both testified that they had forbidden him to go down into the mine for any purpose. The other evidence shows that the mine was a dangerous place to work in from the fact that blasting was constantly going on in the mine, and that the consequence of such blasting was to loosen the ore and rock in the roof and sides of the mine, so that there was danger from the falling of such ore and rock; and the evidence establishes conclusively the fact that the plaintiff was injured by ore falling from the roof of the mine.

We are very clear that, upon the evidence in the case, the question should have been submitted to the jury whether the plaintiff was at work in the mine at the time of the injury by the direction of the pit boss or of the captain of the mine; and, if so at work by such direction, then whether he was of sufficient age and experience, or had sufficient information from the captain or pit boss, or from any other source, to comprehend the dangers incident to such employ-

Jones, by guardian ad litem, vs. The Florence Mining Co.

ment. Had the jury found that plaintiff was sent to work in the mine by the pit boss or captain of the mine on the day the accident happened, and that, from his age, inexperience, and want of information, he did not comprehend the dangers attendant upon such employment, then the plaintiff would have been entitled to recover, although the injury was the result of the negligence of the miners who were his fellow-servants.

The fact that the plaintiff was employed up to the day of the accident to work above ground, at an employment not of a hazardous character, can have but little bearing on the question of the defendant's liability, except so far as it might, in connection with the other evidence in the case, tend to show that the persons representing the defendant did not consider it proper to employ a boy of his age to work under ground in the mine. The evidence on the part of the plaintiff shows that there was no agreement to work only at one kind of work, but that he was to be at the direction of the pit boss, and do such work as he was ordered by him to do. If he directed him to go into the mine to work, the plaintiff had the right and perhaps it was his duty to go to work there. The real question to be determined, so far as the plaintiff's rights are concerned, is this: Did the defendant, through its agents, do its duty towards the plaintiff, when they sent him to work in the mine (if he was sent to work there), by informing him of the dangers incident to that kind of work? or was the plaintiff of sufficient age and experience, or had he sufficient knowledge on the subject, to comprehend the dangers incident to such employment? These questions should have been submitted to the jury. It was error, therefore, to nonsuit the plaintiff.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

See notes to this case in 28 N. W. Rep. 214, and 25 Am. L. Reg. 591.— REP.