HERRING, Appellant, vs. E. I. Du Pont de Nemours Powder Company, Respondent.

*April 20—May 11, 1909.*

*Master and servant: Injuries to servant: Negligence: Evidence: Concurrent negligence of master and fellow-servant: Assumption of risk: Contributory negligence: Printed case: Costs.*

1. In an action for injuries to a servant caused by a sudden escape of acid from an earthenware spigot, evidence that, by reason of the inherent characteristics of the spigot, the core or plug thereof was liable to be raised in its socket by an upward pressure of acid to which it was subjected, that by such raising was

rendered possible and probable the escape of the acid in such a way as to endanger those necessarily working around the spigot, and that the device intended to prevent such raising was, by reason of wear and other surrounding circumstances, likely to fail of its purpose, is sufficient to warrant submitting the question of the master's negligence to the jury.

2. Where an injury to a servant is within anticipation by a reasonably prudent and intelligent person, except that extreme care in the adjustment of the apparatus in use would probably have protected against the injury, the duty of making such adjustment resting upon a fellow-servant, the master's liability and its proximate causal relation with the servant's injury are established, even though the defect is effective only in conjunction with the negligence of the fellow-servant.

3. It cannot be said as matter of law that a servant assumed the risk of his employment where there is evidence tending to show that, while the servant was expert in his knowledge of similar mechanical devices elsewhere in the factory, he was uninformed of the adequacy of the particular device to control, or of the danger arising from, hydrostatic pressure of liquid in a pipe.

4. Where the evidence is not conclusive either that an injured servant did not know, or that as an ordinarily prudent person in his circumstances he should have known or foreseen, that there was any peril in placing himself in the position in which he was injured, the question of his contributory negligence should be submitted to the jury.

5. A printed case not confined to matter necessary to present questions raised on appeal, and not even an abridgment thereof, violates Supreme Court Rule 6, and costs for its printing are within the prohibition of Rule 44.

MARSHALL, J., dissents.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Reversed.*

Action for personal injury. Defendant was the proprietor of a large plant at Barkesdale, Wisconsin, for the manufacture of dynamite and other high explosives. Plaintiff and a co-employee were charged with the duty of conducting the process of manufacturing nitroglycerine in one of the houses adapted to that purpose. The process consisted of drawing glycerine through one pipe into a tank called a "nitrator," and in drawing mixed nitric and sulphuric acid through

another pipe to mix therewith. The acid was first drawn in a charge of 7,000 pounds into a scale tank about eighty feet away and ten to twenty feet higher up, and then, by the opening of a gate valve at the outlet of that tank, flowed by gravity to the nitroglycerine house and into the nitrator. The pipe through which it was conducted was three or four inches in diameter, and near the open end thereof, emptying into the nitrator, was located an earthenware spigot, the core of which was slightly conical, extending vertically through the walls of the spigot with a two and a half inch hole through the core, which, being turned in line with the pipe, opened it and permitted the acid to run, and, being turned at right angles to the line of the pipe, closed it. This spigot was about eight feet from the floor of the nitroglycerine house and was lower than the scale tank from which the acid started, so that there were about eleven pounds upward pressure of the acid upon this conical plug, which weighed some nine and a half pounds. This pressure was of course greatly reduced when the plug was turned so as to permit the acid to flow through it. The core or plug fitted accurately into its socket, with the smaller end downward, but, as the persistent upward pressure of the acid was liable to raise it, it was fitted with a swinging board about ten inches in length, called a "chuk," which was cut on the lower end so as to be slightly eccentric, so that the longer side or the lower corner thereof should rest firmly on the plug and prevent its raising in its socket. If it rose so as to leave a space between the core and the walls of the spigot, the acid was likely to escape through such space, either dripping to the floor or being ejected with more or less force upward around the core. The same result was likely if a particle of dirt or sand got between the core and the walls of the spigot. The hanging chuk was so worn as to barely touch the top of this core at one point, and there was evidence that, by vibration in the building, it might become disengaged, all of which was fully apparent to observation. Plaintiff was a thor-

·oughly skilled workman with this and similar apparatus.  On the day in question he had filled the scale tank outside of the building, and, at a signal from his fellow workman, had opened the valve at that tank to allow the acid to run.  The fellow workman at the time of giving such signal had opened the earthenware spigot sufficiently to allow the acid to run through it, and, as his duty was, had attempted to arrange the hanging chuk so as to press upon the core and hold it in place.  Plaintiff, after opening the gate valve, had returned to the nitric acid house, and thereupon discovered a slight leakage from the bottom of the earthenware spigot.  He thereupon, according to custom, mounted a stool about four feet in height to remedy this defect, presumably by pressing more firmly in place the core.  As he mounted the stool and brought his face above the spigot, acid spurted upward therefrom into his face, causing him severe injury.  No similar event had ever been known in the use of such spigots, which were common in similar processes elsewhere in the factory. At the close of the plaintiff's evidence the court rendered judgment of nonsuit, from which plaintiff appeals.

For the appellant there was a brief by *E. C. Alvord,* attorney, and *Sanborn, Lamoreux & Pray* and *Horace B. Walmsley,* of counsel, and oral argument by *Mr. A. W. Sanborn* and *Mr. Alvord.*

For the respondent there was a brief by *A. W. McLeod,* attorney, and *J. P. Laffey,* of counsel, and oral argument by *Mr. McLeod.*

DODGE, J.   There being evidence that, by reason of the inherent characteristics of the earthenware spigot, the core or plug thereof was liable to be raised in its socket by the upward pressure to which it was subjected, that by such raising was rendered possible and probable the escape of acid in such a way as to endanger those necessarily working about such spigot, and that the device intended to prevent such rais-

ing was, by reason of wear and other surrounding circumstances, likely to fail of its purpose, we deem it clear that a situation was shown which the jury might have deemed inconsistent with that degree of care owed by the employer in a business dealing with such dangerous substances. There remains of the plaintiff's case, therefore, only the question of proximate cause. We have no doubt of the tendency of the evidence to establish actual causation, and that the injury was within anticipation by a reasonably prudent and intelligent person, except for the consideration that extreme care in the adjusting of the chuk would probably have protected against any such injury. The duty of such adjustment, several times daily, rested upon a co-employee. There is no evidence that he did or did not carefully perform that duty on the present occasion. If he did, and the injury nevertheless occurred as the result of the defects, the proximate causal relation would of course be obvious. If, however, the defects were effective only in conjunction with the negligence of a fellow-servant, the defendant's responsibility is no less certain under the law as fully established in this state. *Jones v. Florence M. Co.* 66 Wis. 268, 284, 28 N. W. 207; *Sherman v. Menominee River L. Co.* 72 Wis. 122, 128, 39 N. W. 365; *Cowan v. C., M. & St. P. R. Co.* 80 Wis. 284, 291, 50 N. W. 180; *Grant v. Keystone L. Co.* 119 Wis. 229, 237, 96 N. W. 535; *Howard v. Beldenville L. Co.* 129 Wis. 98, 113, 108 N. W. 48; Beach, Contrib. Neg. § 304.

There thus being evidence from which the jury might have found the defendant's negligence and its proximate causal relation with plaintiff's injury, the next question for consideration is whether the evidence conclusively establishes plaintiff's contributory negligence either by way of assumption of the risk or by any affirmative act. There is evidence tending to show that plaintiff, while expert in his knowledge of such mechanical appliances elsewhere in the factory, was uninformed of the inadequacy of this particular overhanging chuk; also,

that he was ignorant of the particular danger arising from the hydrostatic pressure of the liquid in the pipe, either as an influence to raise and loosen the plug or to cause the spurting of the acid.   There is nothing in the surrounding physical facts to render incredible the first allegation of ignorance, nor do we think that the ordinary mechanic, though chargeable with knowledge of the physical structure of such an appliance, must irrefutably be presumed to have realized that the fact of the acid being brought from an elevation of several feet would produce pressure enough either to raise and loosen the plug or cause the spurting of the acid.   It was an event which is not shown to have ever occurred in the factory, and one of which the probability became apparent only upon application of somewhat abstruse and special knowledge of hydrostatics, which we think is not necessarily and as matter of law attributable to the great mass of mankind circumstanced as plaintiff was.   Reasonable minds might well differ upon the question, and therefore whether such a plaintiff assumed the risk.

Whether plaintiff is shown to have been guilty of affirmative acts of contributory negligence is perhaps a question of more doubt.   True, it was his act in mounting the stool which brought his face in a position near the spigot from which his injury might result.   True, also, it was possible to have escaped such danger by a trip to the tank in which the acid was stored some eighty feet away and outside the place of his work and there cutting off the flow of the acid through the pipe, though to somewhat serious interruption of the manufacturing process in hand.   But that his act in mounting the stool and bringing his face over and near the spigot should be negligence it must have occurred under such circumstances that an ordinarily prudent and intelligent man would have foreseen at least the probability of some injury. The act itself was one required to be done many times daily in the performance of the work imposed on plaintiff and his

co-worker. If, as we have concluded in discussion of the assumption of the risk, it is credible from all the evidence that plaintiff or any other man of ordinary prudence and intelligence under like circumstances might have been unaware that there was any danger of the forcible escape of acid so as to imperil him, then it is not conclusively established that the act of ascending the stool was negligence at all, or that it had proximate contributing effect toward his injury. We think the evidence is not conclusive either that he did know or that as an ordinarily prudent person in his circumstances he should have known or foreseen that there was any such peril. We are persuaded that at the close of plaintiff's case the evidence was sufficient, unqualified and unexplained, to support a verdict for plaintiff on all of the issues and that the non-suit was erroneous.

The printed case is not confined to matters necessary to present the questions raised, and is in no sense an abridgment of even that, as required by Supreme Court Rule 6. Its prolixity has necessitated much needless and wasteful expenditure of the time of the court which ought not to be diverted from more important duties. Rule 44 prohibits costs for printing such case.

*By the Court.*—Judgment reversed, and cause remanded for a new trial: no costs for printing case.

MARSHALL, J., dissents.