HERRING, Respondent, vs. E. I. Du PONT DE NEMOURS POW-DER COMPANY, Appellant.

*January 29—February 18, 1913.*

*Appeal: Law of the case: Decision on former appeal.*

A decision of this court on a former appeal, that the evidence was sufficient to carry the case to the jury upon all vital issues, is the law of the case and is binding when the same questions arise on a later appeal upon substantially the same evidence.
WINSLOW, C. J., and BARNES, J., dissent as to this case.

APPEAL from a judgment of the circuit court for Douglas county: FRANK A. ROSS, Circuit Judge. *Affirmed.*

Action for a personal injury. The case has been three times tried. The first trial resulted in a judgment of non-suit which was reversed on appeal. 139 Wis. 412, 121 N. W. 170. The reversal was because of there being a fair basis in the evidence for a jury to find defendant guilty of want of ordinary care which proximately caused the injury and that defendant neither assumed the risk nor was guilty of con-tributory negligence. On the second trial there was a spe-cial verdict finding all the material issues in favor of the plaintiff. That was confirmed on motion for a new trial as regards there being conflicting reasonable inferences; but, it was thought the evidence so clearly preponderated.in defend-

ant's favor on some material questions that it should be afforded another opportunity to try the case. On the third trial, resulting in the judgment, now complained of, the jury again found the material issues in plaintiff's favor. The nature of the case sufficiently appears in the report on the first appeal.

For the appellant there were briefs by *J. P. Laffey* and *A. W. McLeod,* and oral argument by *Mr. McLeod.*

For the respondent there was a brief by *E. C. Alvord* and *Sanborn, Lamoreux & Pray,* and oral argument by *A. W. Sanborn.*

MARSHALL, J. The printed cases upon the several appeals satisfy us that the evidence upon the first and second trials was substantially the same as upon the last one. So the decisions before rule now as to the evidence being sufficient to carry the case to the jury on all vital issues. That is so elementary we need not illustrate by referring to any of the numerous instances where it has been applied. Therefore there is no other course to pursue now than to affirm the judgment. No question of any moment is pressed upon our attention which is not identical with or included within some question raised on the first appeal, and practically on the second as well, and decided against appellant. A question once decided in this court, right or wrong, becomes a rule for the case after it is no longer subject to review on appeal from the particular result reached and the circumstances in respect to the matter remain unchanged.

*By the Court.*—Judgment affirmed.

The following opinion was filed March 11, 1913:

WINSLOW, C. J. (*dissenting*). It is very easy to say, as is said in the opinion of the court, that the decisions upon the former appeals in this case control the present appeal and

necessitate affirmance of this judgment. This is indeed a very conclusive answer to the appellant's contentions, if it be justified by the facts. I am sure that my brethren will not misunderstand me when I say that I think it is not so justified. Certainly the appellant's counsel made a lawyer-like argument to the contrary and, as it seems to me, an argument worthy of answer in the opinion of the court. If one of the functions of an opinion be to show that the appellant's contentions are fallacious, the opinion of the court does not fill the requirement. To meet a serious argument by saying "it is not so" may put an end to the discussion, but will not convince or satisfy the mind.

By examination of the opinions upon the former appeals (139 Wis. 412, 121 N. W. 170, and 145 Wis. 521, 130 N. W. 454) it will be seen that the only one which has any bearing on the question now before us is the first one. That was an appeal from a judgment of nonsuit, and this court reversed the judgment, holding (as I read the opinion) that there was evidence from which the jury might find (1) that the chock, by reason of a worn condition, was likely to fail of its purpose, and (2) that great care on the part of the co-employee, whose duty it was to adjust the chock, would probably have protected the plaintiff against injury; (3) that the absence of such care would be negligence of a fellow-servant, for which the master would not be responsible, but (4) still, if the accident resulted from both causes acting in conjunction, the master would still be liable, although without the negligence of the fellow-servant the accident would not have happened. In brief, the idea was that there was one element of negligence on the part of the master which the evidence tended to prove, namely, a worn condition of the chock; and that if the jury found this element to exist and found also its proximate causal relation to the accident there could be a verdict against the defendant, notwithstanding the fact that the negligence of a co-employee in failing to prop-

erly adjust the apparatus to which the chock was suspended (called the bridle) might have contributed to the happening of the accident.

Now if the evidence on the present trial were the same as on the first it would be settled that the question whether the chock was defective from wear, and, if so, whether that defect bore a proximate causal relation to the accident, was for the jury, but as I read the record there was a substantial change in the state of the evidence.

Upon the various motions made after judgment, the circuit judge filed a written opinion in which he says:

"It was agreed between the parties upon the trial that the spigot and plug were in proper condition, and that the chock was not worn or in any sense out of condition, except that plaintiff claimed that the bridle had been raised or slipped up on the rods supporting same so as to raise the chock about one eighth of an inch from the top of the plug, and as to whether or not the alleged improper adjustment of the chock upon the plug was the proximate cause of plaintiff's injury."

Turning to the bill of exceptions and examining the colloquy upon which this statement is evidently based, it seems to me that it quite satisfactorily supports the circuit judge's statement. It appears that during the examination of one of the witnesses the circuit judge asked the counsel for the plaintiff whether they claimed that the chock was defective in shape or improperly adjusted. Mr. Lamoreux, one of plaintiff's counsel, replied that it was imperfect as to its lower end in its form, shape, and location, so that it was necessary to do some other things,—and at this point he was interrupted by Mr. Alvord, the leading counsel for plaintiff, who said, "It was too short." The colloquy then went on. Court: "Too short, you say—now if it were adjusted lower on the bridle it wouldn't be too short?" Mr. Alvord: "No." Court: "Is the defect that you claimed in the adjustment, or in the chock itself?" Mr. Lamoreux: "It was in allowing

it to remain in the condition where it was too short—to allow it to remain in the condition, with the knowledge of the man who had it directly in charge, and that it hadn't been changed from the time the man was injured." Court: "You don't claim any defect in the chock itself?" Mr. Alvord: "It is perhaps worn on the lower part. I presume likely there was some wearing." Mr. Lamoreux: "It didn't do the work for which it was intended." Court: "Not because the chock itself wasn't built right, but because it was not adjusted properly to make it fit the spigot." Mr. Lamoreux: "Those questions are for the jury, we think." Court: "I asked the question in view of this offered testimony. Objection sustained."

Further than this, the whole apparatus was sent to this court, including the identical chock and bridle, and the same was set up in the consultation room and conclusively proved, to my mind, that if the chock was properly adjusted so that its lower end hung in the proper relation to the plug the convex end thereof would necessarily fit into the concave top of the plug, and make any upward motion of the plug impossible.

To sum up, I think not only that the circuit judge drew the proper inference from the concessions of counsel, but I think that the apparatus itself demonstrates that no other conclusion was possible, and hence that the accident happened either by reason of the plaintiff's own act in moving the chock himself in order to operate the plug, or by reason of the neglect of the fellow-servant whose duty it was to properly adjust the bridle. In either case there would be no liability on the part of the defendant.

BARNES, J. I concur in the foregoing dissenting opinion of the Chief Justice.