.Huu,,' J.,
This action.was originally brought in the court of common jpl'eas for the plaintiff, by Mary Reagan, her next friend, her ■ mother,. plaintiff being a minofi at the time the action was- *73 commenced, but she became of age before the casé was tried and ■her own name was substituted as plaintiff. The action was brought for personal injuries which plaintiff sustained while m the employ of the E. P. Breckenridge Company in the city of Toledo. At the time she entered into the employ of the com■pany she was a girl of fifteen years. She had never-worked in a factory, or at similar employment, and had no knowledge of ■machinery. She applied to the plaintiff in error for employ.ment, and was employed and set to work at a machine which was used for stamping tin, or stamping and cutting tin. It was run by a fly wheel operated by a band, thrown into gear by put-ding the foot on a treadle, and when it was thrown into gear a die, as it was called, was thrown down by the power, or rather, -the stamp was pushed or thrown down by the power upon the die or plate underneath. This machine which she operated .had a round stamp or punch-like part: some of them were square. The machine shown in court as an exhibit, had a square stamp. She was put to work at cutting strips of tin with, this machine, like the piece which I hold in my hand, .narrow strips of tin, which when fed into this machine, were cut into short pieces, called “clips,” that were used in the .fastening- of small tin boxes, and the larger clips were .used in fastening tin cans. After working there about four days, she was injured. Having placed her finger under the stamp, as she claims, for the purpose of removing pieces of tin, the stamp came down on the end of the forefinger of her left hand, and it was cut off. She recovered a verdict in: the common pleas and judgment was there entered for $300.00. This proceeding in error is prosecuted to reverse that judgment.
. The claim of plaintiff in error is, that the verdict was not ■sustained by the evidence; was against the weight of the evidence and contrary to law, in that no negligence was shown on the part of defendant below; and, further, that the record shows -contributory negligence on the part of plaintiff below; and. that-therefore the motion for a new trial should have been sustained. .
- • Counsel for the two parties differ widely in their views "of t,he case, plaintiff in error claiming that it is clear that there is -no cause of action shown or made out against the company j *74 ■while counsel for defendant in error claim that the case is so clear that a penalty should be imposed upon the plaintiff in error.
The plaintiff below made two general complaints against the defendant; First, that she was young and inexperienced, being only fifteen years of age, without any knowledge of machinery, and that the defendant failed to instruct her prop-erly in the operation of the machine and the dangers connected therewith; and that she was set to work without any proper in- . 'struction; and it is further claimed that the machine itself was defective, in that the die was in bad condition, especially that the stamp was of poor material and dull, or soon became dull after being sharpened, so that it did not cut the tin smoothly, but left the edges rough, so that instead of falling down aftler. they were cut, as was intended, they would stick to the die and interfere with the operation of the machine, so that it was necessary to remove them in some way in order to proceed with the work. And she claimed, further, that the machine was in bad order in that it was sometimes thrown into gear, or into operation, without the foot being placed upon the treadle, so that the stamp was pushed down without anything being done by the operator, and this, it was claimed, made it a dangerous machine, liable to be thrown into motion at any time. She claims that she complained of the defective condition of the machine to the persons in charge of the machines, whose duty it was to repair them, and that she was, from time to time, promised that it would be repaired, and was told to go on with her work.
These allegations are subsequently denied by the defendant below. The questions in the case, and the only questions, then, are these: Was the evidence sufficient to establish a case of actionable negligence against the defendant company; and does it show contributory negligence.
It was claimed by the defendant below that plaintiff was given particular instructions, when she was employed and set to work at this machine; it was denied that the machine was out of repair, and claimed that her contributory negligence consisted in putting her finger under the stamp in such a way that it might be injured or cut off; and claimed, further, that *75 she herself put or might have put her foot upon the treadle,, when her finger was in position, and thus have thrown the machine into gear.
The record shows that the plaintiff was a girl of fifteen years; without any experience in the operation of this machine, or of any machine. From the result here, this machine may be regarded as a machine at least somewhat dangerous to the persons operating it, especially if they got their fingers under this stamp. She testifies as to the instruction given her when she went into the employ of the company. She says that Mr. Shaber, who seemed to have had that duty, took her in charge and conducted her to the machine and staid about five minutes, and showed her how to put the tin in, and then some one called him and he went away.
She says: “He put the tin in the die, and showed me how to put my foot on the treadie.”
She is then asked: “What, if anything, did he say to you about how you should operate the treadle?”
“He told me I should put my foot on the treadle, that is all.”'
“Did he give you any instructions other than that?”
He operated the machine before her. She was asked if he said anything to her about the dangers of the machine, that there was danger of getting hurt by the machine, and she says he did not.
After he went away she commenced the operation of the machine, and after she had operated it about two hours, the stamp got dull and it was necessary for her to ask to have it sharpened, and she went to one of the men who had charge, whose name was Nordolf. The man who gave her her instructions, Shaber, testified that he instructed her somewhat more fully than she states, in regard to the operation of the machine, and says that' he told her it was dangerous to put her fingers under this stamp; and, further, that he called her attention to an iron hook' that was hanging on the machine, and told her that if the tin stuck to the die, or piled up so that it was necessary to remove it, to use this hook and not use her fingers. The plaintiff testifies that nothing of that kind occurred ; that she was given no instructions as to the iron hook, and that in fact there was no iron hook there; that she was. not *76 ■furnished any such hook during the time she was there, which was about,four days.. Other witnesses were called by her, some others employed in the shop, who testified that they had no iron hooks for their machines and never saw any in the shop until after the injury. Witnesses called by the defendant, some of them, testified that they were furnished with hooks of this kind to remove the tin, and upon that question the testimony was conflicting.
It will -be as well, perhaps, to discuss, at this point, the other claim of negligence, that the machine was defective. Her testimony is that the stamp grew dull, several times a day, during the four days that she was there, and that she went to Nordolf and Shaber to have it sharpened, and that they would come and sharpen it and tell her to go on with her work, and in the course of an hour or two it would grow dull again and she had to repeat this, and that this continued until, noon of the day when she was injured. She was hurt not long after noon on the fourth day. The machine grew dull again, so that the tin was “burred,” as they call it when it is not cut off smoothly, and it stuck and she went to Nordolf. She claims at that time, that he told her to go on with her work, that he would be there in a short time and fix the machine. She went back to the machine and went on with her work, and about a half an hour after that she was injured.
She testified farther as to the other claimed defect, that the stamp would come down without her putting her foot on the treadle,; that she had noticed this once during the time she was operating the machine; that she had seen machines apparently thrown into gear or remain in gear after taking her foot off the treadle, and the stamp come down, and go up and down, as she said, without her foot being on the treadle. The machine was so constructed that by putting the foot on the treadle a pin' of some kind at every half revolution of the fly-wheel wo'uld fall into a socket and fasten together, or combine the -fly-wheel and the shaft and operate the same, and if the foot were taken off the treadle, then the pin, operated by a spring, would fly back. The proper way to operate the machine was to put the foot upon the treadle each time it was necessary to bring the stamp' down, and thus operate it. I will here read *77 a. little of the testimony as to what occurred there on the day that she was injured:
“Q. Now coming down to the day you were hurt, just tell the jury what, if any, trouble you had the forenoon of that day, in the operation of this machine7 A. Well, he would sharpen it and it would work about five minutes, then I would have to run after him again.
“Q. How many times did you go after the man that forenoon to get them to fix it? A. I don’t know just how many times, but I went several times.
Q. “What did they say to you when you asked them to come and fix it? A. They told me they would come and fix it right away; they told me I should work on until they came; they knew the die was no good.”
She testifies that they told her, several times, that the die was “no good,” as she puts it, and that it would be necessary to get a new one.
“Q. Now, after dinner, how long was it until you was hurt? A. Well, I do not know just how long, it was about half an hour.
“Q. You had your lunch there with you, did you? A. Yes, sir.
“Q. What if any complaint did you make about the machine that afternoon ? A. I went out and told him that the die was dull. I could not do. anything with it.
“Q. .To whom did you go? A. Carl Nordolf,
“Q. Where was he standing when you saw him? A. Over at the bench.
“Q. What bench? A. Over by May Brothers and Ella Andrews.
“Did you talk to him in the presence of May Brothers? A. Yes, sir. .
“Q. Tell the jury whether or not you took a piece of tin with you that you had been working on, when you went over there? A. Yes, sir, I took a piece of tin, to show him that it would not come out, that it stuck in the die.”
She testifies then to showing this-tin to him, and then was asked tjbis question:
“Q. uTéll the jury whát Mr'. Nordolf said when you went *78 to him. I mean after you had your lunch on the day you were hurt ? A. He told me to go back and work on it and he would, come and fix it.”
It seems to have been conceded upon the trial that Nordolf and Shaber were men in authority there, so that their declarations were competent, and no objection was made to this testimony.
She says she then went back to work upon the machine and that she relied upon Nordolf’s statement. And she testifies that he did not come to fix it before she was hurt. Nordolf denies this testimony of plaintiff, and the question went to the-jury upon her testimony and that of Nordolf. She says that after this talk with Nordolf she continued to operate the machine ; that the stamp was dull and did not cut off the clip of tin. smoothly, that it “burred up,” that the tin would not fall, down as it was cut off on account of the edges being rough,, and she put her left hand around back of the stamp upon the-back side of the die, the “slanting part,” as she calls it, where the tin was intended to drop down as it was cut, and with the forefinger of her left hand attempted to remove the pieces of tin in that way; and while she was doing this the stamp came-down and the end of her finger was cut off, or so mangled that it had to be amputated at about the first joint. She was asked whether she did not put her foot on the treadle while she had her finger in this position, and she says, in some parts of her testimony, that she did not, and in others that she did not think she did. She says it was all done very suddenly, that she was hurt, and just how everything occurred she cannot state positively, but she gives it as her best judgment that she did not put her foot on the treadle.
It is urged that under her testimony the jury were not warranted in finding that she did not herself put her foot on the treadle and throw the machine into gear. It is, of course, clear that she did not put her foot on the treadle purposely, for she. knew that to do that would bring the stamp down, and she would not purposely cut off her own finger. By experimenting with the machine here in court it could be seen and was found, that it required considerable force to press down the treadle enough to throw the machine into gear, so that it is not *79 lxkely that she would do it unconsciously, and she testifies, ■sometimes, that she did not do it, and at other times, she says .she does not think she did it. ...
. In our judgment, under her testimony and under the facts ■and circumstances of the case, - it .was á fair question to submit to the jury whether she put her foot on the treadle and thus Threw the machine into gear herself, while she had her finger under the stamp, or. whether in some other way the stamp.was -pushed down. She testifies that once before during the period, that she was there the stamp came down without her putting her foot on the treadle. So that if her testimony is to be belfeved on That point, there was some defect in the machine which might cause it to do that; and it was explained by.one witness that the shaft of such a machine sometimes sticks to The fly-wheel, and in that way the stamp is thrown into motion without the machine being thrown into gear. She testifies that at one time she complained to one of these foremen, either .Nordqlf or Shaber, of. the machine coming down in this .way*
These questions were submitted to the jury, whether the ’ company .was guilty of negligence directly contributing to her , injury.
It was the duty of the company to give her, in entering its . -employ, proper instructions as to the manipulation and operation of this machine; to give her such instructions as a reasonably prudent person would give to a girl of that age when set to operate a machine of that character. The instructions to a child should be more specific and of a different character from those to a grown person of mature judgment. Under the law of this state the question of negligence in a child is t© be determined by the judgment and discretion of ordinary children of the age of the child in question. She testifies that the instruction was meagre; that she was given no hrtruction as to the dangers of the machine; that she was not told that the stamp might come down and thus injure her finger if she put it under the stamp. She said she was given no instruction upon that subject. She testifies that she was not furnished with any iron hook or other means to remove the tin in case it clogged -up.
*80 Whi}e the instruction that was given her might have been, and probably would have been, sufficient for a grown person, according to her testimony, the instruction was rather slight for a girl of only fifteen years of age and of that lack of judgment and discretion which is ordinary with children of that age, a girl who had no experience whatever in the operating of machines, who had never worked in a factory of any kind; and whether under those facts and circumstances the instruc- ■ tion that was given her, according to her testimony, was such as an ordinarily prudent and careful man would give to a child, of her age and experience, when set to work at such a machine, it seems to us was a proper question to submit to the jury.
While, of course, it was clear that if she put her finger under, the stamp and it came down, she would get hurt, still instruction and warning upon that subject to an inexperienced child would have been proper and pertinent. Her evidence shews that when she complained of this machine, repeatedly, and when it was getting dull and being repaired several times a day, she was ordered by the foreman to go on with her work, -tc continue work. She testifiés that she was provided with no means to take this tin away; it was impossible to go on with: the work unless the tin was removed in some way, and, obeying the orders of her superior, she continued the work, and, childlike perhaps, did what a person of maturer years would not have done, removed this tin with her' fingers, which she had been given no instructions, as she says, not to do .
The supreme court, in Rolling Mill Co. v. Corrigan, 46 Ohio St., 283, say in the syllabus:
“Persons who employ children to work with or about dangerous machinery, or in dangerous places, should anticipate that they will exercise only such judgment, discretion and care as is usual among children of the same age, under similar circumstances, and are bound to use due care having regard to their age and experience, to protect them from dangers inci- ‘ dent to the situation in which they are placed; and as a -rasonable precaution, in the exercise of such care in that behalf, 4 it is the duty of the employer, to so instruct such employes concerning the dangers connected with their employment,' which from their youth and inexperience they may not ap *81 precíate or comprehend, that they may, hy the exercise of such care as ought reasonably to be expected of them, guard against and avoid injuries arising therefrom.”
- And on the question of contributory negligence, as applied to children, in. the first paragraph of the syllabus, the court say:
“In the application of the doctrine of contributory negligence to children, in actions by them, or in their behalf, for injuries occasioned by the negligence of others, their conduct should not be judged by the same rule which governs that of adults; and while it is their duty to exercise ordinary care to avoid the injuries of which they complain, ordinary care for them, is that degree of care which children of the same age, of ordinary care and prudence, are accustomed to exercise under like circumstances.”
We think that under the testimony as disclosed by the rec-ord it was a fair question to submit to the jury here whether this girl was given proper instruction at the time she went into the employ of the company.
She claimed, further, that the machine itself was defective. It is clear from the evidence that there was something 'he matter with this machine, for, several times a day, according to her' testimony (and she is corroborated in that by other witnesses),' the stamp grew dull so that it cut the tin so roughly that it was almost impossible to operate the machine and it was necessary to sharpen the stamp and in a short time it would grow dull again. It is clear from the testimony that the stamp was a poor piece of metal, or that there was something *he nuc-.er with it. A machine that was of proper material or of proper construction, would not operate as this machine did. The machine being in that condition, growing dull in this way, it could only be operated by removing in some way the tin which clogged it on account of its rough edges, and she removed it, according to her testimony, with the only means she had, her fingers. Acording to her testimony, the machine was also defective in that the stamp came down without the machine being thrown into gear by stepping- on the treadle.
It is urged that she herself was clearly' guilty of negligence-in putting her fingers under the stamp; that she knew that if *82 she:did;that and the stamp came down, her fingers would-be. cht.off.■■ She says she did know it, anybody would know that.But her conduct should be governed, as stated by the:supreme.. court,' not by the rule of such care or prudence as would be exercised ,by an adult,;but by such care and prudence as. a girl of her age and experience wculd be expected to exercise. under the same or similar circumstances. She was operating this machine; it was her duty to do it; she was paid to operate id She was told to operate it, and she continued to operate it-in the only way that she knew how to make it work. ' And-where an employe is obeying orders of his master, the supreme court has said that- although it may be dangerous, yet, in many cases, it is, after all, a question for the jury to determine whether a .person of ordinary care and prudence, situated • in the same way as the employe, and being ordered to do a. certain thing, would obey that order or not.
I refer to Van Duzen Gas & Gasoline Engine Co v. Schelies, 61 Ohio St., 298, (43 W. L. B., 53) where the supreme court say in the second paragraph of the syllabus:
. “‘One who as a servant, does that in his employment which lie is ordered to do by his master, and is injured by the culpable negligence of the latter, is not deprived of the right to recover for the injury by the fact that it was apparently dangerous, if a person of ordinary prudence would, under the cir- ■ cumstances, have obeyed the order, provided he used ordinary care in obeying it.
. And on page 308, the supreme court quote with approval from 76 Pa. St., as follows:
“The servant does not stand on the same footing with his master. His primary duty is obedience, and if, when in the discharge of that duty, he is damaged, through the master, it is but meet that he should be recompensed.”
And on page 309 of' the opinion:
“The clear result of the best considered cases is, that where an order is given a servant by his superior to do something within his employment, apparently dangerous, and, in obeying, is injured from the culpable fault of the master, he may recover. unless obedience to the order involved such obvious danger, that no man of ordinary prudence would have obeyed it; *83 and this is a question of fact for the jury, to determine under •proper instructions.” 1 ■'
f t It seems to us that it cannot be said as a matter of law, by :.a<reviewing court, that the plaintiff was guilty of contributory heigligence .in continuing to operate that machine as she did, -after she was told by the foreman to go on with her work, ■•and that he would come and repair the machine; that it was .¡■..a; fair question, under the rule laid down by the supreme court, for a jury to say whether, under all the circumstances, considering her position there, of a subordinate, considering her ■/’.age, it was negligence in her to continue the operation of that machine and to remove the tin with her fingers, having been • furnished, according to her testimony, with no instrument to .do this with.
.... Tt appears from the pleadings in the case and the evidence, that •. jthe plaintiff was at the time only fifteen years old, and while ■ the question was not formally raised upon the trial so as- to be ..submitted to the jury, still it is argued by counsel in their •■brief, and the fact is in the case, that the girl was under the age at which the law of Ohio permits the employment of children to operate a machine of this kind. . •
■ ‘.Sedion 6986-1, Revised Statutes, prohibits the employment of. a- child of this age to operate a dangerous machine: ' '
; • “N.o child under the age of sixteen years, shall be employed ..by any person, firm or corporation in this state, at employment whereby, its life or limb is endangered, or its health is likely to .be.injured, or its morals may be depraved by such employ:ment.” : ••..
'■-•¡And section 6986-2, Revised Statutes, makes such employ- . ment-a misdemeanor and fixes a penalty therefor. • g
.■ And’it has been held in 32 Hun. (N. N.), page 7, that'-the ’employment of a child under the statutory ■ age is negligence, but that it might be defended against by showing ■contributory .negligence on the part' of the child, such’conduct as- would be .. contributory negligence in a chile of that’ age. The syllabus 15¡of:the..case is as follows: ■ 0 0
ir: ■ "“That .plaintiff, a girl about fourteen years old, was emplOy- ' fled-by the defendant in his steam laundry. .'She was first em- ■ '< ployed, to sort and prepare collars fof washing.' Subsequently *84 she was employed to feed collars and cuffs into an ironing machine. which consisted of two pair of iron rollers, one in front or the other. The rollers revolved one upon the other under a heavy pressure, and the collars and cuffs inserted between the first pair of rollers were drawn through and received by another employe from the second ”air. While the plaintiff was attempting to take a lap out of a collar she had placed between the rollers her hand was caught, drawn between them and! severely injured.
“In an action by her to recover the damages so sustained; ‘‘field, that it was for the jury to say whether the plaintiff was engaged in a business or vocation dangerous to her life or limbs, within the meaning of section I of chapter 122 of the act: of 1876, making it a misdemeanor tor any person to employ any child under sixteen years of age in such a business or vocation.
“That if the employment of.the plaintiff was a violation of the act the defendant was liable for damages she had sustained, provided that the jury should find that she had not, taking into consideration her youth, been guilty of contributory negligence.”
And on page 10 of the opinion the court says:
“The statute then imposed a rule of duty upon the defendant which will sustain an action in favor of any one injured by the violation of it. The negligence upon the part of defendant is absolutely made out if the occupation to which the girl was put fell within the law of 1876. That was a question for the jury; the machine is described minutely, its power is manifest and the manner of operating it fully described. Upon this part of the case the verdict is absolutely sustained. Great stress is put by the appellant upon the question of contributory negligence upon the part of the plaintiff. This question is one for the jury, and the age of the child is a fact to be duly; considered.”
The statute, we think, is a proper thing to take into consideration in this case in considering the question of the negligence of defendant company and we are inclined to the view held in 32 Hun. (N. Y.), page 7, and^'we hold that the employment of such a child, is some evidence of negligence against the company, it being a violation of the statute. The statute in *85 dicates that in the judgment of the legislature, children of that age are unfit by reason of their indiscretion to be employed in the operation of a dangerous piece of machinery. We are of the opinion that the evidence was such as to warrant the jury ir returning the verdict that they did; that it was not against the evidence or contrary to law, and the judgment of the court •of common plaes is affirmed, but without penalty.
B. W. Toler ton, for Plaintiff in Error.
Hurd, Brumback & Thatcher, for Defendant in Error.

Nose— Hurd, Brumback & Thatcher, ,for Plaintiff in Error: The express promise of defendant to repair the machine, relieves Miss Reagan from any claim of contributory negligence in continuing its operation. Coal & Car Co. v. Norman, 49 Ohio St., 598.
The case of L. S. & M. S. Ry. Co. v. Winslow, 10 C. C. 193, is a case where several complaints were made of a defective ap plianoe and promises to repair the same received.
The late case of Vanduzen Gas Co. v. Schellies, 43 W. L. B., 53; 61 Ohio St., 298, also directly applies (o-tisis ease.
Cases are to be found of exactly the same character as the ease at bar, where minors have been injured while operating in stamping machines. Vorbrich v. Guder & Paeschke Co , 96 Wis. 277, 71 N. W. 434; Am. Neg. Rep., 750; Van Sickel v. Ileley, 75 Hun. 537.
Knowledge of danger is itself a question of fact, and if the jury believes that by reason of youth and inexperience plaintiff did not know or appreciate the danger incident to this serv ice,and that the company had exposed him to the danger without warning, it may find that the risk was not one assumed by entering the service. Little Rock etc. R. Co. v. Leverett, 48 Ark. 333; Jones v. Florence Mining Co., 66 Wis. 268.
. On the subject of the duty to keep machinery in repair, Fuller v. Jewett, 80 N. Y., 46, is most instructive.
On the subject of the duty of an employer to instruct his servant. O’Connor v. Adams, 120 Mass. 431.
-, The fact that the defendant now has hooks in its factory shows the practicability of avoiding such accidents. The testimony clearly shows that whatever ■ instruments some few of the girls may have had,, the plaintiff was never furnished with any hook or tool with which to remove the tin, or instructed as to the proper way in which to do it.
The youth of the plaintiff is of course a large ele.ment in excusing her for her action in undertaking to remove the tin with her fingers. Being entirely unfamiliar with machinery, and having received no instructions of the dangers incident thereto,she undertook to do the work in the way that the other girls testify they themselves frequently did it.
Sec.-5986-1 R. S. reads: “No child under the age of sixteen years,shall be employed by any person, firm or. corporation in. *86 tibia . state, at employment whereby its life or limb is endangered, or its health is likely to be-injured, or its morals may be depraved by such employment.” And provides a flnt for ao doing.
It.is probable that under this section alone a case of negligence per se is made out. The question has never been determined in this state, but the great weight of authority elsewhere is that the violation of a statute for which a misdemeanor is provided makes out a case of negligence per se. Cook v. Lalance Mfg. Co., 33 Hun. 351
Measure of Care — A child of the age of fifteen years is only required to exeroise care in proportion to one of that age and parity. 7 Am. & Eng. Enoy. Law, 405 (2nd Ed.); Bach on Contrib. Neg., sec. 73; West Phila. Ry. v. Gallagher, 108 Pa. St., 524; Houston v. Texas Ry., 60 Texas, 103; Central Ry. Co. v. Rylie, 87 Ga., 491.
This was held to be the proper rule in the oase of a girl sixteen years of age. Haycroft v. L. S. & M. S. Ry., 64 N. Y., 636. Also Rolling Mill Co. v. Corrigan, 46 Ohio St., 283.