Cowan vs. The Chicago, Milwaukee & St. Paul R. Co.

COWAN, Administrator, Respondent, vs. THE CHICAGO, MIL-
WAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*September 29 — October 20, 1891.*

*Railroads: Injuries to employees: Defective appliances: Evidence: In-
structions to jury: Combined negligence of principal and fellow-
servant.*

1. In an action against a railroad company for the death of an em-
ployee resulting from the breaking of a defective brake-rod, the
broken end of the rod itself showed a flaw or old crack extending
more than half way through it. The superintendent of defend-
ant's car depot testified that if there was a crack two thirds through
the rod it would be discovered by an inspection, but that if the
crack was one third through it would not be discovered. He also
testified that it was the duty of the car inspectors to examine the
brake-rods by looking at them and by tapping them with a ham-
mer. *Held,* that the evidence was sufficient to sustain a finding
that the proper and ordinary inspection of the car should have
disclosed the defect, and hence that the defendant was negligent in
not discovering and remedying it before the accident.

2. The error, if any, in excluding a question put to said superintendent
as to whether there was anything in the appearance of the broken
rod "from which a person could tell whether there was a flaw in it
previous to the time it broke, or how extensive that flaw was," was
cured by allowing him to answer the question "Is there anything
in the condition of that iron which would indicate to you what its
condition was at the time it broke?"

3. Where several facts and circumstances are proved, all of which tend
to prove a given fact, it is not proper for the court to instruct the
jury that one of these, standing alone, is not sufficient to prove the
given fact.

4. Where the injury to a servant is caused by the negligence of the
master and that of a fellow-servant together, the master is liable
therefor.

APPEAL from the Circuit Court for *Dunn* County.

The action is to recover damages for the alleged negli-
gence of defendant company, resulting in the death of
Thomas Hesting, the plaintiff's intestate.

The defendant owns and operates a railroad extending from Red Cedar Junction, northerly, through Menomonie, to Cedar Falls, Wis. Near Menomonie a spur track leaves the main line on its west side, and runs up quite an ascent to a brick yard. The course of this spur track is circular, and it is one mile and a half in length. Cars are discharged from it to the main line towards the north.

On October 27, 1887, between 5 and 6 o'clock in the afternoon, an engine was run to the brick yard to haul out some loaded cars. One of the cars belonged to another railroad company. It came to defendant's road October 8th, and the defendant had used it to haul a load of stone from Dunnville to Menomonie. It was then loaded at the brick yard on the spur track with 12,000 bricks, weighing about twenty-five tons. It was desired to put this car ahead of the engine, and so it was detached from the engine, and allowed to run down the track near the brick yard to a certain point where it was to be stopped. When it reached that point the conductor attempted to set the brake, but the lower brake-rod, which was under the car and attached to the brake-beam, broke, and the car thereby became uncontrollable, and started down the spur track, attaining in its progress a great velocity. The signal for throwing the switch to connect the tracks, so that the car would run on the main line, was immediately given from the engine, and the switchman at that point threw the switch accordingly.

Just at that time a hand-car on which were the section foreman, Murray, and two section hands, one Greeley and Hesting, the plaintiff's intestate, approached the switch from the south on the main line on their way to the hand-car house, which stood a little less than sixteen rods north of the switch. The switchman signaled the hand-car to stop, and it was stopped just before it reached the switch. The sectionmen on the hand-car heard the signals from the brick yard, and knew they meant that the spur track should

Cowan vs. The Chicago, Milwaukee & St. Paul R. Co.

be connected with the main line, but such signals conveyed no information that a car had escaped control, and was running down the spur track. The foreman, Murray, requested the switchman to throw the switch, and allow the hand-car to pass. He did so, and the car passed the switch, which was immediately thrown back, and the two tracks again connected. Before the sectionmen reached the hand-car house, Greeley saw the car loaded with bricks running down the spur track with great velocity. He at once called to the others to jump, and he himself jumped from the car, as did also Murray. Hesting did not. The runaway car struck the hand-car, dashing it to pieces and killing Hesting.

The only negligence imputed to the railway company is that the rod broke by reason of a defect in the iron, discoverable upon a proper inspection, which the court defined to be such an inspection as railway companies usually make of cars in use. The testimony tends to show that the car in question had been inspected twice or more after it came to the possession of defendant.

On the trial, motions for a nonsuit and that the jury be directed to find for the defendant were overruled. The testimony and rulings of the court on the trial are further stated in the opinion. The jury found for plaintiff, and assessed damages at $2,000. A motion for a new trial was denied, and judgment for plaintiff entered, pursuant to the verdict. The defendant appeals from the judgment.

For the appellant there was a brief by *John T. Fish*, attorney, and *H. H. Field*, of counsel, and oral argument by *Mr. Fish* and *Burton Hanson*. They contended, *inter alia*, that the fact that rust was found on the broken end of the rod on the morning after the accident, affords no evidence sufficient to justify the jury in finding that a defect in the rod existed prior to the time of the accident. *Stewart v. Everts*, 76 Wis. 36–39; *Beery v. C. & N. W. R. Co.* 73 id. 197, 202; *Disher v. N. Y. C. & H. R. R. Co.* 15 Am. &

Eng. R. Cas. 233–237. The burden was upon the plaintiff to show that there was a defect, that it could have been discovered by a reasonably prudent inspection, and that it had existed for such length of time as to charge the defendant with notice of it, or with negligence in not discovering it. Ordinary care is all that the law requires in the matter of inspection. *Smith v. C., M. & St. P. R. Co.* 42 Wis. 520, 525; *De Groff v. N. Y. C. & H. R. R. Co.* 76 N. Y. 125, 131; *Hotis v. N. Y. C. & H. R. R. Co.* 6 N. Y. Supp. 605; *Ballard v. Hitchcock Mfg. Co.* 4 id. 940; *Atchison, Topeka & S. F. R. Co. v. Ledbetter*, 34 Kan. 326; *Atchison, T. & S. F. R. Co. v. Wagner*, 33 id. 660; *Philadelphia & R. R. Co. v. Hughes*, 119 Pa. St. 301. Applying the rule adopted in some courts as to foreign cars, the car inspectors and the section man would be fellow-servants. *Mackin v. B. & A. R. Co.* 135 Mass. 201; *Railroad Co. v. Fitzpatrick*, 42 Ohio St. 318; *Smith v. Potter*, 46 Mich. 258; *Nashville, C. & St. L. R. Co. v. Foster*, 10 Lea, 351.

For the respondent there was a brief by *John H. Ives* and *R. D. Whitford*, and oral argument by *Mr. Ives.*

Lyon, J. 1. The main proposition urged by counsel for a reversal of the judgment is that the testimony does not support the verdict.

No doubt the breaking of the brake-rod under the runaway car was a direct cause of the death of Hesting. Neither is there any doubt that the rod broke because of a serious defect in it. It is not claimed that the railway company had actual notice of such defect before the rod broke. It is claimed, however, that a proper inspection of the car would have disclosed the defect. If this is true, negligence must be imputed to the company for failing to discover and remedy the defect. Hence the question upon the merits of the case is, Would a proper inspection of the car have discovered the defect in the brake-rod at the point where it broke?

The short end of the rod after it was broken, being the end thereof attached to the brake-beam, was produced as evidence by the railway company, and has been returned here with the record. It is made of round iron, seven eighths of an inch in diameter, and is about one foot in length. The broken end shows plainly a flaw or old crack in the iron, extending over more than one half of the surface thereof, and indicates a cracked surface of the rod more than half-way around it at the place where it broke. The section foreman, Murray, testified that he saw this piece of the brake-rod the next morning after Hesting was killed; that the rod was broken squarely in two; that, from the outside, very nearly two thirds through the rod, there appeared to be an old break, indicated by rust, while the balance showed a fresh break. One Haley, another witness called by plaintiff, testified that he was employed by defendant; that he saw the broken rod the next morning after Hesting was killed; that he should say about one third of the break was old; and that it was pretty rusty. Severson, another of plaintiff's witnesses, who was a blacksmith and had worked in iron fifteen or twenty years, testified that in his opinion, if the rod was cracked two thirds through, the tension on it when in use would have a tendency to open the crack wider. The tension being applied lengthwise of the rod, and being at times necessarily very great, and the rod being but seven eighths of an inch in diameter, it scarcely needs an expert to inform us that such would be the effect. The superintendent of the defendant's car depot at Minneapolis, E. A. Wescott, testified that "if there was a crack in the brake-rod two thirds through this under rod, on the under side, it would be discovered by an inspection of the car. If the crack was one third through it would not be discovered by an inspection." This witness also detailed the duties of inspectors of cars as follows: " Their duties are to sound the wheel, the brake

Cowan vs. The Chicago, Milwaukee & St. Paul R. Co.

lever, and rods, as they pass along the sides of the car, and to get around under the truck, between the two trucks, on the body of the car, to examine, to see if there are any defects to be observed there; the same at the end of the car, to examine the draft-wheel. Their duty requires them to inspect the brakes and rods from observation and from a blow of the hammer. Where there is an indication of a flaw or anything like that, they simply tap it with a hammer."

The testimony has been fully stated, because (as before observed) the chief contention on behalf of the railway company is that the testimony does not tend to prove any negligence on its part contributing proximately to the death of Hesting. It seems to us quite obvious that the testimony is sufficient to support a finding that the ordinary inspection of cars in use, in compliance with the rule laid down in *Ballou v. C. & N. W. R. Co.* 54 Wis. 257, should have disclosed the defect in the brake-rod, and hence that the defendant is chargeable with negligence in not discovering such defect before Hesting was killed, and either correcting it or ceasing to use the car.

2. When the witness Wescott was on the stand, counsel for defendant showed him the broken rod, and asked him if there was anything in its appearance " from which a person could tell whether there was a flaw in it previous to the time it broke, or how extensive that flaw was." An objection to this question was sustained. The objection was that the testimony was incompetent, and not proper expert testimony. It would seem, however, that the ruling really only went to the form of the question, for the next question was: "Is there anything in the condition of that iron which would indicate to you what its condition was at the time it broke?" The same objections to this question, and in addition the objection that it was irrelevant, were overruled, and the witness answered the question in the

Cowan vs. The Chicago, Milwaukee & St. Paul R. Co.

affirmative; and testified, further, that the iron was in a crystallized condition, that it had been exposed or eaten by gases or overheated, and that such condition is not discoverable by ordinary inspection. We think the error in ruling out the question first above stated (if error it was) is abundantly cured by the subsequent examination and testimony of the witness on the same subject.

3. The court refused to give the jury the following instruction proposed on behalf of defendant: "You cannot find from the mere appearance of the broken piece of the brake-rod that there was a defect therein which might have been discovered by an ordinarily prudent inspection before the accident." As an abstract proposition, the proposed instruction may or may not state the law correctly. If it does so, still it was not error to refuse it, for the reason that there was other testimony than the mere appearance of the rod tending to show a defect which ought to have been discovered by a proper inspection. Where several facts and circumstances are proved, all of which tend to prove a given fact, it is not proper for the court to select one of these, and instruct the jury that it, standing alone, is not sufficient to prove the given fact. The refusal of such an instruction, under like circumstances, was held proper in *Keenan v. Hayden*, 39 Wis. 558.

4. Although the subject is not discussed in the printed argument of counsel for the railway company, yet, in his oral argument of the case, he contended that the testimony shows Murray to have been guilty of negligence contributing directly to the killing of Hesting, in that he passed the switch after he heard the signal from the brick-yard, and that there can be no recovery because Murray and the deceased were co-employees. The court instructed the jury, as requested by counsel for the railway company, that "the deceased and the section foreman were fellow-servants, and if you believe from the evidence that the section foreman

was careless or negligent at and just before the time of the accident, and that such carelessness or negligence contributed to the death of the deceased, you must find for the defendant."

The position of counsel and the instruction given by the court are both erroneous. The jury have found that the railway company was negligent. It is settled in this state, by repeated decisions of this court, that in such case, if the negligence of the principal and that of a fellow-servant together produced the injury, the principal is still liable therefor. *Stetler v. C. & N. W. R. Co.* 46 Wis. 497; *S. C.* 49 Wis. 609; *Atkinson v. Goodrich. Transp. Co.* 60 Wis. 141; *Sherman v. Menominee R. L. Co.* 72 Wis. 122. But the error in such instruction was favorable to defendant, and does not affect the judgment against it. It should be said, however, that we doubt whether there was sufficient testimony of the negligence of the section foreman to send the question of his negligence to the jury, were it a material question in the case. It does not appear that the signal from the brick-yard was one of danger, or that it notified those who heard it that it meant anything more than that an engine and cars, under control, were about to run down the spur track to the main line. In that event the men would have had ample time to run the hand-car to the hand-car house, and remove it from the track, before the train on the spur track would have reached them.

The foregoing observations dispose of all the alleged errors adversely to the defendant.

*By the Court.*— The judgment of the circuit court is affirmed.