Hudson vs. Northern Pacific R. Co.

HUDSON, by guardian *ad litem*, Respondent, vs. NORTHERN PACIFIC RAILWAY COMPANY, Appellant.

*September 27 — October 12, 1900.*

*Negligence: Court and jury: Pleading: Guardian* ad litem: *Instructions to jury: Proximate cause.*

1. In an action to recover for personal injuries, it appeared, among other things, that plaintiff, a boy nine years old, went onto defendant's drawbridge, 228 feet long, at the request of the bridge tender, and, as the bridge was being closed, stood at one end of the draw to signal the tender when to stop. The bridge was operated by means of a sweep or lever, connected with the gearing below, the bridge tender taking hold of the end and traveling in a circle while closing the bridge. Plaintiff, whose foot was crushed by being caught between the ends of the rail on the bridge and the shore rail, testified that he stood facing the end of the bridge with his foot on the rail. There was no evidence that the place where he stood was dangerous, or that the bridge tender could have seen his danger. *Held*, that there was no evidence to sustain a finding of defendant's negligence.

[2. Whether, the allegation of the appointment of a guardian *ad litem* being denied and no proof being offered to support it, the cause of action fails, not decided.]

3. An instruction that proximate cause is that from which the result follows as the natural and probable consequence,— probable from the standpoint of the person who is charged with the lack of ordinary care claimed as the cause of the result complained of,— is erroneous. He is chargeable with such consequences as a person of ordinary intelligence and prudence ought reasonably to have foreseen would follow as the natural and probable result of his acts.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Reversed.*

The plaintiff was a minor about nine years old, living in the city of Superior. The defendant is a railroad corporation, and, as a part of its line of railway, owned and operated a drawbridge across Nemadji river, in said city, used exclusively for railroad purposes. It employed and kept a bridge tender, whose duty it was to open the drawspan to

allow the passage of boats on the river. On September 13, 1899, the plaintiff, with another boy, was playing on the banks of the river, near the bridge. A vessel desiring to pass signaled for the opening of the bridge. The tender invited the boys to go upon the bridge with him while it was being swung, to assist in its opening, which invitation was accepted. The bridge was opened, the boys assisting, and remained open half or three quarters of an hour, and until the boat returned. They then started to close the bridge. The span was 228 feet, and was operated by a sweep or lever in the center, which is connected with the gearing below, and the bridge was closed by the operator taking hold of the end of the sweep and traveling in a circle. The other boy assisted the tender in closing the draw. The plaintiff went out to one end to ride, and stood facing the abutment, to signal when the draw was closed. He said he had his foot on the rail, and as it closed his foot was caught between the end of the rail of the bridge and the rail of the land side, and was crushed. This action is brought to recover damages for such injury. The negligence alleged is that "the said watchman negligently and carelessly, and without any regard for the safety of the said *Ralph Hudson,* closed the said draw in a reckless and heedless manner." The court refused defendant's motion for a direction of a verdict. A verdict of $373 was rendered for the plaintiff. The court refused to disturb it, and from a judgment for plaintiff the defendant has appealed.

*Louis Hanitch,* for the appellant.

For the respondent there was a brief by *Crownhart & Foley,* and oral argument by *W. R. Foley.*

BARDEEN, J. The first error assigned is that the court erred in refusing to direct a verdict for defendant. This involves a consideration of the evidence in the case. We have reviewed it carefully, and are unable to find any evi-

·dence to sustain the charge of defendant's negligence. The theory upon which plaintiff's counsel seeks to sustain this action is that plaintiff's position on the end of the draw was perilous, and that the bridge tender was negligent in closing the draw while he stood in this dangerous place. In our view of the case, it becomes unnecessary to inquire whether the plaintiff was a volunteer, a trespasser, or in what capacity he stood while on the bridge. Even if it be ·conceded that he was rightfully there, his case will be in no way strengthened. The plaintiff was a bright, intelligent boy, nearly nine years of age. As the bridge was being ·closed he went toward the end, as he claimed, to ride, and to signal when it had been turned into place. He was then ·about 114 feet from where the bridge tender was at work. He stood with his back toward the tender, *his foot on the rail*. As the bridge closed, his foot was caught between the end of the rail on the bridge and the end of the shore rail. In the performance of his work the bridge tender followed the sweep or lever used to close the bridge, traveling in a circle. In passing around, there would be a short time ·during each circuit when his face would be toward the end of the bridge where the boy was. There can be no ·doubt but that he knew the boy had gone out to the end of the bridge. There is nothing, however, in the case to show that this was hazardous, or that any particular danger threatened the boy. It is not shown that the boy was *non sui juris*. On the contrary, the evidence shows that he was ·exceedingly bright and intelligent for his age. So there was nothing in the age of the child, or the fact that he went ·to the end of the bridge to ride, that would charge the tender with any apprehension of danger. There is no evidence showing just how long the plaintiff had been in the position he was in when hurt. Neither is it shown that the ·tender saw or could have seen that the boy's foot projected ·beyond the end of the bridge, as it must have done to get

caught.    Nor is it explained how, his foot being *on the rail,* it was possible that his toes should be caught between the rails.    In fact, it is incomprehensible how, if his foot remained on the rail, it could have been caught and crushed as he says that it was.    If he stood there with his foot on the rail, as he repeatedly says he did, he could not have been injured, except by an instant change of position.    This is the only possible explanation of the accident.    The bridge tender was not bound to anticipate such action on his part.    Had his foot remained upon the rail, he was in no peril, caused by the operation of closing the bridge.    Had the boy stood with his foot projecting beyond the end of the bridge in such a manner that it was likely to be caught, there is no proof that the bridge tender could have seen or did see him in such position.    The extent to which the evidence goes is that, when making his rounds in closing the bridge, for a portion of the time his face would be toward where plaintiff was standing, and he could then see the end of the bridge.    Actionable negligence cannot be predicated upon vague surmises or uncertain inferences.    " There must at least be sufficient evidence to remove the question from the realms of mere conjecture, else the trial court should pronounce the judgment of the law on the situation, by taking the case from the jury when requested so to do."    *Hyer v. Janesville,* 101 Wis. 371.

Another question raised is that, the allegation of the appointment of a guardian *ad litem* being denied, and no proof being offered to support it, the cause of action fails.    We need not determine this question, as the judgment must be reversed, and, if tried again, proof of such appointment can readily be made.

The court charged the jury that " proximate cause is that from which the result follows as the natural and probable consequence,— probable from the standpoint of the person who is charged with the lack of ordinary care claimed as

Hudson vs. Northern Pacific R. Co.

the cause of the result complained of." This definition is more favorable to the defendant than the law warrants. The standard of care usually required of the person who is charged with negligence is ordinary care. He may be in fact a very careless or a very cautious person. His standpoint may be the one or the other. The legal standard is that he is chargeable with such consequences as he, being a person of ordinary intelligence and prudence, ought reasonably to foresee would follow as the natural and probable result of his acts. *Deisenrieter v. Kraus-Merkel M. Co.* 97 Wis. 279; *Nass v. Schulz,* 105 Wis. 146.

Again, the court charged the jury that, "There is no direct evidence that the bridge tender, Vreeland, saw plaintiff in the position in which he stood when he was hurt. You are instructed, however, that from the evidence in the case it is competent for you to infer and find that plaintiff was seen in such position before the accident happened, by Vreeland; but you are instructed that you are not, from the evidence, compelled, as a matter of course, to find that he did so see him." As we have already seen, this instruction was wrong, because there is no evidence in the case to warrant the conclusion that he saw him in the position he was when his foot was crushed.

*By the Court.*— The judgment of the superior court of Douglas county is reversed, and the cause remanded for a new trial.