REVOLINSKI, by guardian *ad litem,* Respondent, vs. ADAMS COAL COMPANY, Appellant.

*May 15—May 29, 1903.*

*Master and servant: Injury to employee: Negligence: Evidence: Contributory negligence: Assumption of risk: Excessive damages.*

1. In an action by a servant for injuries sustained while attempting to ungrip a coal car from the cable propelling the car, it was alleged in the complaint and established by the evidence, among other things, that the cable, composed of a number of small wires, was worn out, many of the wires broken and projecting, and that this was the cause of the failure of the grip to work. *Held,* that evidence of former occurrences of a similar nature within two or three months prior to the accident was admissible, and was not rendered incompetent because it was shown that after such occurrence the cable had been repaired, or that thereby issues were raised not formed by the pleadings.

2. In such action, evidence that the arc lights with which the place of the accident was lighted were sometimes obscured by coal dust from the operation of defendant's machinery, is admissible on the question of whether plaintiff was negligent in not discovering the condition of the cable, although there was no claim that the place where plaintiff was working was defectively lighted.

3. In order to sustain, as matter of law, the claim that an employee, injured in the discharge of his duties, was guilty of contributory negligence, or had assumed the risk, the evidence on which such claim is based must be uncontradicted, or so clearly proven that no reasonable inference can be drawn to the contrary.

4. A servant, eighteen years of age, was injured by having his skull fractured, resulting in injuries to the eyes and brain. There was expert evidence that the injuries were permanent in their nature. *Held*, that a verdict of $4,100 was not excessive.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

This is an action to recover for personal injuries. The defendant is a foreign corporation operating an extensive coal dock and yard in Manitowoc. On the night of October 18, 1899, the plaintiff, then being eighteen years of age, was seriously injured while operating a small grip car in the defendant's yards. The plaintiff had worked for the defendant in its yard for about a year and a half before the night of the accident, but his work had been that of a laborer shoveling coal into cars on the ground floor of the yards. It appeared that there was in the defendant's yards a large trestle or platform, some twenty feet above the ground, upon which men worked, and where coal was received from vessels into hoppers, from which it was emptied into small grip cars which ran upon a tramway, and were propelled by an endless cable, about three-quarters of an inch in diameter, made of steel wire, and about half a mile long, which was running continuously between the rails upon which the cars ran. This part of the defendant's premises was called by the men "upstairs." The plaintiff had never worked upstairs in the yard, but upon the night in question was asked by the foreman, Adler, if he did not want to work upstairs. He at first made some objections, on account of inexperience with the machinery, but finally consented. When he commenced to work that evening he was told to fill cars from hopper No. 1, and send them forward to the scales, about 100 feet distant, to be weighed. This duty involved opening the hopper and letting the coal therein run out into the tram car, and, when the tram car was full, pulling up the endless cable with a hook a few inches into the grip which extended down from the front of

the tram car, which grip was operated by a lever handle extending out from the tram car beyond the side of the car. When this lever was lifted up, the grip was opened, and the cable dropped; but, when the lever was pressed down, the grip was closed, and the car propelled with greater or less speed, according as to whether the grip was tightly closed, or only partially closed, so as to allow the rope to slide through without moving the car at the same rate at which it was going. There was some dispute as to how much instruction with regard to his duties was given to the plaintiff, but it is agreed that he was told that he must not let the cars bump into each other. It appears that there was a rope hanging nearby the place where the plaintiff was at work, which could be pulled if it was necessary to stop the cable, but that he was not told of this. His duty, after the grip car was full, was to grip it onto the cable and send it forward to the scales, where it was to be weighed; ungripping it at a sufficient distance before reaching the scales so that the momentum would carry it to the scales. He did his work successfully for several hours, when he met with the accident in question. His own testimony tended to show that at the time of the accident, having loaded a car, he gripped it onto the cable for the purpose of sending it forward to the scales, and was walking by the side of the car, ready to ungrip it at the proper point so that its momentum would carry it to the scales; that when he reached a point about thirty feet from the scales he attempted to ungrip the car, there being another car immediately ahead of him, and about twenty-five feet distant, and a fellow workman in front of that car; that, when he attempted to ungrip the cable by pulling up the lever, the cable did not drop, but, on the contrary, the car started faster; that the plaintiff then became excited, fearing a collision, and attempted to dislodge the cable from the grip with the hook in his hand, leaning forward for the purpose, and while so engaged he did not notice the rapidity with which his car was approaching the

car ahead, and while he was still trying to ungrip his own car his head was caught between the two cars, and his skull was fractured, and he was otherwise severely injured. The jury returned a special verdict by which they found (1) that the plaintiff was injured at the time and in the manner stated; (2) that at the time of his injury he properly opened the grip by means of the lever; (3) that the cable was in such a defective condition that broken wires or strands therein stuck in the grip and prevented it from dropping when the plaintiff opened the grip; (4) that the plaintiff had no knowledge or experience in the work before the night on which he was injured; (5) that the defendant did not give the plaintiff any instructions as to the operation of the cars, or the dangers therefrom; (6) that the defendant knew, through its foreman, that the plaintiff was a minor, and also knew the extent of his knowledge and experience in the work; (7) that ordinary care required that the defendant should have instructed the plaintiff as to the operation of the cars, and the dangers therefrom; (8) that, under the circumstances, and considering the plaintiff's age and experience, the danger of attempting to detach the cable from the grip in the manner which the plaintiff adopted, was not open or obvious to the plaintiff; (9) that the defendant knew of the defective condition of the cable in time to have removed the same before the plaintiff was injured; (10) that the plaintiff did not know of such defective condition, nor by the exercise of ordinary care should he have known thereof; (11) that plaintiff did not know that the defective condition of the cable sometimes prevented it from dropping down from the grip when opened by the lever, nor should he have known that fact by the exercise of ordinary care; (12) that the defective condition of the cable made the operation of the cars more unsafe than it would have been, had such defect not existed; (13) that defendant's neglect to remedy the defect in the cable was the proximate cause of plaintiff's injury; (14) that

plaintiff was not guilty of contributory negligence; (15) that his damages were $4,100. The defendant moved to correct the special verdict by changing certain answers, and also to set aside the verdict and for a new trial, both of which motions were overruled. Judgment was entered for the damages found upon the verdict, and the defendant appeals.

For the appellant there was a brief by *Phillips & Hicks,* and oral argument by *M. C. Phillips* and *N. P. Christensen.*

For the respondent there was a brief by *O'Connor, Schmitz & Wild* and *Schmitz & Burke,* and oral argument by *A. J. Schmitz.*

WINSLOW, J. The verdict in this case, though unnecessarily long and involved, tells a very plain story of injury resulting from actionable negligence. Examination of the evidence shows that all the findings are sufficiently supported by the evidence. Indeed, it is rare to find a case of this nature where the fact of the employer's negligence is as satisfactorily proven as in the present case. There is ample evidence to show that the endless steel cable which furnished the motive power to the cars had been for some weeks before the accident in a defective condition; that it had been patched in a number of places; and that the ends of the strands, each composed of a number of smaller wires, frequently got loose and frayed out so that they would catch in the grips, causing the very difficulty which seems to have occurred here. It is said that the evidence of these former occurrences of a similar nature within two or three months prior to the accident was incompetent, because it is shown that after each such occurrence the rope was repaired, and that issues are raised not formed by the pleadings. It is a little difficult to see upon what theory these claims of error are based. The complaint charges that the rope was worn out, and many of the wires broken and projecting, and that this was the cause of the failure of the grip to work, and we do not see how the fact could be more

satisfactorily shown than by just such testimony as was introduced. It seems to be the best evidence of the fact claimed, and we can entertain no doubt of its admissibility.

Certain evidence was admitted, tending to show that the arc lights with which the shed was lighted were sometimes obscured by coal dust from the operation of the hoppers, and would occasionally die down, and then flare up again. This is said to have been inadmissible, because there was no claim that the place was defectively lighted. It appears, however, that it was received only for the purpose of showing the conditions and surroundings at the time, and as tending to show whether the plaintiff was negligent in not discovering the condition of the cable, and for that purpose it was undoubtedly competent. *Kucera v. Merrill L. Co.* 91 Wis. 637, 65 N. W. 374.

The general claim is made that, as matter of law, the evidence shows that the plaintiff was guilty of contributory negligence, and assumed the risk. This claim is largely based upon evidence which is directly contradicted either by the plaintiff or other witnesses, or both. In order to sustain such a claim, the evidence on which it is based must be undisputed, or so clearly proven that no reasonable inference can be drawn to the contrary, and this is far from being the case here.

The claim that there was no proof of negligence on the part of the defendant is equally untenable, and for substantially the same reasons.

It is also claimed that the damages are excessive. Upon the whole case, we cannot say that we should be justified in holding the damages excessive. The injury was very serious. The plaintiff's skull was fractured, resulting in injuries to the eyes and brain, and there is expert evidence that the injuries are permanent in their nature.

*By the Court.*—Judgment affirmed.