GRANT, Appellant, vs. KEYSTONE LUMBER COMPANY, Respondent.

*September 11—September 29, 1903.*

*Master and servant: Personal injury: Contributory negligence: Assumption of risk: Negligence of fellow-servant: Defective appliances: Proximate cause: Court and jury.*

1. Plaintiff, while working as head sawyer in a sawmill, was struck and injured by a strip of lumber which, while passing between the saws of an edger, was caught by a saw and thrown back. Upon the evidence—tending to show that his duties did not require him to, and he never did, have anything to do with the operation of the edger or with the men running it; that when at his work, and at the time of the injury, he was fifty-seven feet away from the edger, with his back to it; that in

passing to and from his work he went within twenty-five feet of the edger, but did not examine it, and did not know there were àny appliances to keep boards from coming back; and that he never saw or knew of boards coming back from it before he was hurt — it is *held* that a verdict for defendant should not have been directed on the ground that plaintiff was guilty of contributory negligence or had assumed the risk.

2. The plaintiff in such case, whose duties as head sawyer consisted in operating a circular saw for sawing logs into lumber, and the men operating the machine for edging the lumber, were fellow-servants, being employed by the same master, under the same control, and performing services for the same general purpose.

3. Upon the evidence—tending to show that the edger was defective and out of repair in particulars affecting the likelihood of lumber being caught and thrown back—it is *held* that the questions whether or not plaintiff's injury was caused wholly by the negligence of his fellow-servants operating the edger, and whether or not the negligence of defendant (the mill owner) in respect to the machine was the proximate cause of the injury, were questions for the jury.

4. An employer who has negligently permitted the use of a machine in doing his work, which, by reason of its defects, is unnecessarily dangerous to his employees, is liable for an injury resulting from its use to an employee who was not himself negligent, even though a co-employee was guilty of negligence in managing the machine, and if it had been carefully handled the accident would not have occurred.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Reversed.*

This is an action to recover damages sustained by the plaintiff while in the employ of the defendant as head sawyer in running a circular saw and by being struck by a board thrown against him by an edger situated fifty-seven feet from where he stood at the time he was injured. Issue being joined and trial had, the court, at the close of the trial, directed a verdict in favor of the defendant. From the judgment entered thereon the plaintiff appeals.

The facts essential to appreciate the questions involved are to the effect that the north end of the defendant's mill extends north to the lake. The plaintiff was a married man,

thirty-nine years of age, and had worked as head sawyer in the mill for eight seasons, and in and about the mill much longer. The circular saw at which he was at work at the time was situated in the northwest corner of the mill, and about forty feet from the north end thereof. That circular saw was used in sawing up logs into lumber, cants, and slabs. As head sawyer the plaintiff's duties consisted in handling levers which controlled the action of the carriage and circular saw. Immediately to the east side and to the rear of the circular saw, and about two feet above the level of the mill floor, was a table in which were a number of live rollers upon which were placed the cants which were thrown from the table by skids—called "kickers"—onto other skids and were taken from there to the gang saws and manufactured into lumber, and the lumber, boards, and slabs were carried along on such tables south to the front of the mill. The plaintiff's duty required him to stand behind and to the right of the circular saw carriage, with his back toward the double gang edger located at or near the center of the mill and fifty-seven feet southerly from where the plaintiff stood at the time with his back toward the edger. The gang edger consisted of three parts—a table in front, about 6x10 feet on the surface, and a table in the rear, about 6x8 feet on the surface, and the gang edger between the two tables, wherein are located the saws and other gearing to do the edging. The tables are about two feet above the floor of the mill, and they each have three rollers over which the lumber is pushed, and they are both placed close against the edger in the center. This gang edger contains six saws—three on the right side and three on the left side—with a space of about forty inches between them when the saws are as close together as they can be placed. Each saw is sixteen inches in diameter. The two outside saws are so attached to the arbor that they do not move sideways, but the four inside saws are so connected to a lever and are so arranged that they can be moved sideways on the arbor. Each

saw is fastened to a collar around the arbor which propels the saws, and they run, when in proper condition, true and perpendicular. .The levers connected with those four inside saws extend to the front end of the front table, and are handled and manipulated by three edger men. These levers and saws are so arranged that the boards and lumber put through the edger can be trimmed or edged to any width desired, or passed through without trimming or coming in contact with any saw. This gang edger is sixty-five inches wide, and has one feed roller in front and two feed rollers in the rear—one directly in front of the other—each of which is four inches in diameter. There are two press rollers in the rear, six and one half inches in diameter, each being twenty-eight and one half inches long, which, with an intervening space of five and one half inches, extend nearly the entire width of the edger. There is a space of five and one half inches between each of the press rollers, and those press rollers are so arranged that they can be raised with levers that have ropes attached thereto which can be pulled down by the edger men, and in doing so will raise the press roller to any height desired. The feed rollers each contain spurs which are calculated to assist in pushing the lumber through the edger. In front of the saws. were arranged twelve teeth—each about fourteen inches long, to prevent pieces of lumber and edgings from being thrown back by the saws. These teeth are fastened to a rod about one and one half inches in diameter situated above the saws and to the front—being almost directly over the front feed roller, and are supposed to be kept in place by pins placed through the rod, one on each side of each tooth. These teeth extend down toward the saws at an angle of about twenty-five degrees, to within about half an inch of the bed or level of the edger. The distances between these teeth were from four and one fourth to nine and one half inches, and they hung loose, so that the points of the teeth moved sideways, causing the distance between the teeth to change. When the mill

is in operation, the saws in the gang edger revolve very
rapidly. All lumber coming from the gang saws as well as
that coming from the circular saw, was put through the gang
edger.

At the time in question a bunch of lumber coming from the
gang saws, which needed no trimming nor edging, was being
put through between the saws of the gang edger without any
intention of having the same come in contact with the saw on
either side. One of the four-inch strips became separated
from the bunch lying loose on the rollers, and swung around
so that the saw struck it and threw it back and hit the plaint-
iff and badly injured him.

*Victor T. Pierrelee,* for the appellant.

*George F. Merrill,* for the respondent.

CASSODAY, C. J. It is said that the trial court directed
the verdict in favor of the defendant on the ground that it
appears from the undisputed evidence that the plaintiff was
guilty of contributory negligence or assumed the risk. The
accident occurred about 2 o'clock in the afternoon of April 30,
1902. There is evidence tending to prove that the duties of
the plaintiff as such head sawyer did not require him to have
anything to do with the operation of the gang edger; that he
never worked upon that edger, and had nothing to do with the
men running that edger; that his work was different work,
and was independent and away from the edger; that when at
work his back was toward the edger and fifty-seven feet away
from it; that he knew nothing about the construction of the
edger; that he never looked at the edger, particularly, before
he was hurt; that he never saw or knew of pieces of lumber
or things coming back from the edger before he was hurt;
that in going to and coming from his work he went within
twenty-five feet of the edger, and could see the frame and
edger when it worked, but never examined it; that he did not
know that there were any appliances to keep boards or other

things from coming back; that he did not know that the fin-gers would spread apart, nor how long they were, nor how long they had been out of order. For the purposes of this appeal we must assume such evidence to be true. If it is true, there is no ground for holding that the plaintiff was guilty of contributory negligence, nor that he assumed the risk. Of course, contributory negligence is a want of ordinary care on the part of the party injured which contributes to produce the injury. There is nothing to indicate that the plaintiff failed to exercise such care. "It is a general rule that, where unusual dangers are known to the employee, and he voluntarily assumes them, if he is thereby injured he cannot recover, because of his contributory fault, even though the master at the same time is guilty of negligence which, without such assumption of risk, would have rendered him liable." *Powell v. Ashland I. & S. Co.* 98 Wis. 36, 73 N. W. 573. Here it does not appear from the undisputed evidence that the plaintiff knew or ought to have known of the danger to which he was thus exposed. "An employee cannot be said, as a matter of law, to have assumed the risk incident to his employment, unless such assumption is shown by undisputed evidence or is so clearly proven that no reasonable inference can be drawn to the contrary." *Revolinsky v. Adams· Coal Co.* 118 Wis. 324, 95 N. W. 122.

2. Counsel for the defendant insists that the plaintiff's injury was the result of the negligence of a. co-employee of the plaintiff, and hence that the plaintiff cannot recover. The general rule deducible from the adjudications of this and other courts, as stated by the late Chief Justice COLE, is that:

"To constitute fellow-servants, it is not necessary that the negligent workman causing the injury and the one injured should both be engaged in the very same particular work. It is sufficient if they are employed by the same master, under the same control, and performing duties and services for the same general purpose." *Toner v. C., M. & St. P. R. Co.* 69 Wis. 198, 31 N. W. 104, 33 N. W. 433, and numerous cases there cited.

In a late case it is said that fellow-servants are defined as "those engaged in the same common pursuit, under the same general control"—as "persons employed in the same general business by a common employer;" that the question is not "controlled by the fact that different parts of the work neces·sary to the general enterprise are placed in hands of employees remote from each other, and receiving immediate command from different superiors, or, indeed, one from the other." *Okonski v. Pennsylvania & O. F. Co.* 114 Wis. 453, 90 N. W. 429, citing numerous cases. We must hold that the edger men were fellow-servants with the plaintiff.

The question, therefore, is whether the plaintiff was injured solely by reason of the improper or negligent manner in which the edger men put the boards through between the gang saws. That is necessarily a question of fact. A witness on behalf of the plaintiff testified to the effect that an armful of strips, from four to six inches wide, which needed no edging, were, at the time of the accident, being merely shoved by the edger men through and over the rollers in the space between the gang saws, which were forty inches apart; that the top strip, which was white pine, fourteen feet long, an inch thick, and four inches wide, swung and jerked on the saw, and it came back and swung half across, and when it started to go it was pointed toward the gang saws; but it swung off—half way across—so that it went over and struck the plaintiff; that he thought it was caused by the third finger being badly bent—crooked—because a strip got in between, and there was nothing to hold it; that when there is no finger catching the board it has got to go back; that the fingers play sideways, and lift up when boards are put through; that he was not sure how much of the board had gone in the roller when it began to swing, but he should say about a foot. The edger man who was so putting through the strips at the time testified quite similarly, and also to the effect that there were. some spikes in the feed rollers that carried some of these four-inch strips out, and so this board was only about two feet be-

hind the saw when it swung; that it was not heavy enough to go through; that there were no press rollers on it, so when the saw got hold of it it went onto the saw to the side, and he was trying to get the pile through when he saw the board lay there, and he then pulled on the east press roller and shoved on it, but could not make it go, and then he got hold of the long rope, and then the board came before he pulled on it; that the board that went back was on the east side, and laid clear down on the roller; that the other boards were probably ten inches from this one; that he never counted the fingers or teeth on the shaft, and could not tell how many there were, nor how far they were apart at the top; that they were from four to six inches apart at the bottom, and they could be spread an inch or so—should say seven or eight inches, but he did not think nine inches; that he did not think there was a finger on the board when it went back; that the fingers were for holding the boards from coming back; that he did not know how the board got by the fingers, but supposed it went between them; that, had a finger gone onto the board, it certainly would have held it, and one would have been on the board if the fingers had not been more than three or four inches apart.    There was other testimony tending to prove that at the time of the injury some of the fingers on the edger were gone from the left-hand side; that the fingers on the edger were loose and would spread out; that the fingers had been out quite a while—because they were old and rusted and broken off close to the shaft, the breaks being old; that the fingers would spread—one would spread out. or bend about nine inches; that the crooked finger caused the strip to come back; that the edger had been in the same condition for some time prior to the accident; that the fingers should not be more than four inches apart; that the fingers in question were very old; that most edgers now have no fingers, but rollers instead; that fingers, properly made, are a complete protection against lumber coming back; that they ought not to be more than two

inches apart; that the saw would shake, because it was worn; that the saws were old, did not run true, and would move, and be wider sometimes than others. In view of such evidence, we cannot say, as a matter of law, from the undisputed evidence, that the injury to the plaintiff was caused wholly by the improper or negligent conduct of the edger men. *Craven v. Smith,* 89 Wis. 119, 61 N. W. 317.

3. Assuming that the conduct of the edger men was improper or negligent, still the question is presented whether the negligence of the defendant in furnishing defective machinery concurred in producing the injury. It was held by this court several years ago, that:

"An employer who has negligently permitted the use of a machine in doing his work, which, by reason of its defects, is unnecessarily dangerous to his employees, is liable for an injury resulting from its use to an employee who was not himself negligent, even though a co-employee was guilty of negligence in managing the machine, and if it had been carefully handled the accident would not have occurred." *Sherman v. Menominee R. L. Co.* 72 Wis. 122, 128, 39 N. W. 365, and cases there cited.

That case is quite similar in its facts to the case at bar. In that case the plaintiff was injured by a plank thrown by an edger, and the court directed a verdict in favor of the defendant, and one of the defenses was that the injury was caused by the negligence of a co-employee. In a later case it was held that: "Where the injury to a servant is caused by the negligence of the master and that of a fellow-servant together, the master is liable therefor." *Cowan v. C., M. & St. P. R. Co.* 80 Wis. 284, 291, 50 N. W. 180. See *Jones v. Florence M. Co.* 66 Wis. 268, 28 N. W. 207. The reason for the rule is that the master is bound to furnish his servants with reasonably safe machinery and appliances with which to work, and a reasonably safe place for doing his work; and, if he fails to do so, he cannot escape liability by delegating such duty to one who in other respects may be a fellow-servant of

the person injured. *Brabbits v. C. & N. W. R. Co.* 38 Wis.
289; *Wedgwood v. C. & N. W. R. Co.* 44 Wis. 44, 41 Wis.
478; *Bessex v. C. & N. W. R. Co.* 45 Wis. 477; *Schultz v.
C., M. & St. P. R. Co.* 48 Wis. 375, 4 N. W. 399; *Cadden v.
Am. S. B. Co.* 88 Wis. 409, 60 N. W. 800; *Renne v. U. S.
L. Co.* 107 Wis. 312, 83 N. W. 473; *Okonski v. Pennsylvania
& O. F. Co.* 114 Wis. 453, 90 N. W. 429. As indicated,
there is evidence in the case at bar tending to prove that the
gang edger was defective and out of repair in the particulars
which have been mentioned. If such defect and want of re-
pair was, by reason of the defendant's negligence, the proxi-
mate cause of the plaintiff's injury, then the defendant can-
not escape liability by the mere fact that the negligence of
the edgermen concurred in causing the injury.

4. Assuming that the gang edger was defective and out of
repair in the particulars mentioned, the question recurs
whether the defendant was negligent in respect to the same,
and, if so, whether such negligence was the proximate cause
of the plaintiff's injury. The essential elements of proximate
cause have been defined so often and so recently as not to re-
quire repetition. *Deisenrieter v. Kraus-Merkel M. Co.* 97
Wis. 279, 72 N. W. 735; *Maitland v. Gilbert P. Co.* 97 Wis.
476, 487, 72 N. W. 1124; *McFarlane v. Sullivan,* 99 Wis.
361, 363, 364, 74 N. W. 559, 75 N. W. 71; *Hudson v. N. P.
R. Co.* 107 Wis. 620, 624, 83 N. W. 769. The important
question is whether the injury to the plaintiff was the natural
and probable consequence of the negligence of the defendant,
and whether an injury to any person ought to have been fore-
seen in the light of attending circumstances by persons of
ordinary intelligence and prudence. We are constrained to
hold that the evidence was sufficient to take the case to the
jury on the questions suggested.

*By the Court.*—The judgment of the circuit court is re-
versed, and the cause remanded for a new trial.